### H. A. McMEANS, TAX COLLECTOR, v. R. W. FINLEY.

#### No. 335.

### R. D. BYROM, TAX COLLECTOR, v. R. W. FINLEY.

#### No. 336.

**1. License Blanks—Duty of Comptroller—Mandamus.**

    It is the duty of the Comptroller to furnish the tax collector of each county blank licenses for use in his office, and it is his right to demand the performance of that duty; and upon the Comptroller refusing to comply, to compel such performance by writ of mandamus ........................ 520

**2. Title of Bill—Constitution—One Subject.**

    Section 35, article 3, of the State Constitution, prescribes: "No bill * * * shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." Our courts have uniformly held, that the provisions as to *one subject* do not apply where two matters are incorporated in the act which are germane to each other, and parts of the same general subject matter.. ..... ...... ..... ....................................520, 521

**3. Act Prohibiting Prize Fighting.**

    The Act of the Twenty-fourth Legislature, at called session, approved October 3, 1895, entitled, "An act to prohibit prize fighting and pugilism, and fights between man and animals, and to provide penalties therefor, and to repeal all laws in conflict therewith," is not in conflict with section 35, article 3, of the Constitution, and is valid ............................... 522

**4. Costs.**

    Suit for mandamus is a suit at law, and by statute (Revised Statutes, article 1421) the successful party shall recover costs. This court therefore will not determine the status of the law at the filing of these suits and prior to the Act of October 3, 1895, for the purpose of determining the matter of costs ...... ............................................................... 522

THESE were original suits in this court for mandamus against the Comptroller to compel him to furnish the applicants blank licenses for prize fighting. The petition by McMeans, tax collector for Hays County, was presented to Justice Denman on September 25, and that of Byrom, tax collector for Williamson County, on September 27, 1895. Justice Denman made an order in both cases, "directing the clerk to cause the Comptroller to be notified in due form of law to appear before the Supreme Court of Texas, on Monday, October 7, 1895, at 10 o'clock a. m., then and there to show cause, if any, why the relief prayed for should not be granted." Citation was issued and served.

The Comptroller answered, basing his refusal upon the grounds:

"1.    Because the statute which pretends to license a fight between man and man is obnoxious to that clause of the Constitution which prohibits duelling.

"2.    Because any law that would authorize a fight between man and man, or man and beast, for profit, is contrary to public policy, and void.

"3.    Because that part of article 5049 of the Revised Statutes of the State, adopted by the Twenty-fourth Legislature, wherein a tax is levied upon fights between man and man, was void at the institution of this suit, by reason of the conflicting provisions of the Criminal Code, which prohibits fights between man and man, and which had been passed in its original form in 1891.

"4.    Because of the Act of October 3, 1895, prohibiting prize fighting, and repealing all conflicting laws."

There were no questions as to the pleadings.    It was agreed upon by the parties:

"That the facts stated in the plaintiff's petition are true, and that the plaintiff is entitled to the relief prayed for in his petition, unless:

"(1) That part of article 5049 of the Revised Civil Statutes of the State of Texas, adopted by the Twenty-fourth Legislature of said State, at its regular session, A. D. 1895, wherein a tax is levied upon fights between man and man, was void at the date of the institution of this suit, by reason of the conflicting provisions of article 1005 of the Penal Code, adopted by said Legislature; or

"(2) Unless the statute passed at the called session of said Legislature, entitled, 'An act to prohibit prize fighting and pugilism, and fights between men and animals, and to provide penalties therefor, and to repeal all laws in conflict therewith,' a true copy of which is hereto·attached, is a valid law, and operates to repeal the said part of article 5049 levying a tax on fights between man and man as aforesaid; or

"(3) Unless the said law attempting to license fights between man and man is void, as being contrary to public policy."

*Warren W. Moore*, for plaintiff McMeans.—[The discussion upon matters not considered by the court is omitted.]   1.  The prize fighting statute of 1895, just passed, is unconstitutional, because the title and body contains, and is, legislation on more than one subject.   It is not like the subject occupation taxes, the same subject with variations; nor like the statute against theft, that denominates as a crime an act intrinsically the same, where a person is the actor, and the variations are only the objects taken.   The statute of 1895 makes separate and distinct acts, indigenous to different nations, in the performances of which the actors are moved by different impulses, a crime.

A fight between man and man, as mentioned in the statute, and between a man and a bull, are different—distinctively so.  So much so,

that there was never a bull fight on American soil, with the exception of one recently held at Cripple Creek, Colorado; while prize fights have been of common occurrence.

Prize fighting was recognized as mala in se by the common law, but plaintiff believes that a bull fight was not. One originated in Northern Europe, among English speaking people; the other, in the southern portion of Europe, among the Latin nations.

And while, under different conditions, parts of statutes have been held as surplusage, it is believed, where the part sought to be so treated was a different subject, but which the Legislature had power to legislate on, that no court has undertaken to say which of the two subjects the Legislature deemed of most importance; or where there was a Constitution like ours, and a bill purported to legislate on two subjects, that a court ever held the statute unenforceable as to one and valid as to the other.

2. The defense in this case, resting if at all upon the statute of 1895, passed since the institution of this suit, and the default of the defendant being the cause of the suit and accrual of costs, in equity the costs ought to be awarded against the defendant. Perkins v. Hume, 10 Texas, 50; The State v. Taylor, 12 Ohio St., 130.

*John W. Parker, Robt. A. John,* and *West & Cochran,* for plaintiff Byrom.

*M. M. Crane,* Attorney-General, in an exhaustive brief and argument, supported the action of the Comptroller under the law as existing when the suits were filed.

*Hogg & Robertson,* associate attorneys for the defendant, argued:
1. That the Legislature has no right to pass a law licensing a crime within the class of mala in se.
2. That by the Bill of Rights the Legislature is limited to the passage of laws for the benefit of the people; and under section 4, article 16, of the Constitution, a fight between man and man can not be licensed.

[The discussion in behalf of defendant upon points not passed upon by the court is omitted.]

*M. M. Crane,* Attorney-General, and *Hogg & Robertson,* attorneys for defendant, filed the following supplemental brief and argument: Since the institution of this proceeding, the Legislature has been reconvened. It has passed a law making a fight between man and man a felony. That law is now assailed. It is insisted that it is unconstitutional; first, because it is a special law; and second, because it embraces two subjects which are expressed in its title.

1. The first objection will be answered by an inspection of the statute itself. It is general in its terms, and can not be very well

classed as a special statute. As to the second objection, it is submitted, that under the rules of construction adopted by this court, it is not well taken. The language of the Constitution upon which it is based is, in substance, that no bill, except the appropriation bills, shall contain more than one subject, which shall be expressed in its title. Const., art. 3, sec. 35. This provision of the Constitution has been the subject of frequent discussion. It is believed, that while the provision in question is mandatory, in its application a liberal construction obtains. If the part of the law objected to as infringing this provision can be construed as properly connected with or subsidiary to the main object of the act as expressed in the title, it is constitutional. Giddings v. San Antonio, 47 Texas, 548; Day Land and Cattle Co. v. The State, 68 Texas, 542; Railway v. Smith Co., 54 Texas, 12; Breen v. Railway, 44 Texas, 302; Railway v. Odom, 53 Texas, 352; Tadlock v. Eckles, 61 Am. Dec., 339, and note; 20 Texas, 782; The State v. Harkinson, 14 Md., 184; Gunter v. L. & M. Co., 82 Texas, 502.

2. None of the provisions of a statute will be held to be unconstitutional when they relate, directly or indirectly, to the same subject, having natural connection, and are not foreign to the subject expressed in the title. The State v. Mallinson, 82 Texas, 511.

3. A law can not be held to embrace more than one subject when the several provisions of the statute are germane to each other. Day Co. v. The State, 68 Texas, 542. The provision that an act shall contain but one subject, which shall be expressed in its title, should be so construed as to support the validity of the act, if possible. 23 Am. and Eng. Encyc. of Law, 234, and authorities there cited. In such cases, hypercriticism is out of place. In re Haynes, 22 Atl. Rep., 923.

It was held by the Supreme Court of the United States, in effect, that an act entitled, "An act to incorporate the Bellville & Illinois Railroad Company," and which contained a section which authorized the city of Bellville and the county of St. Clair to subscribe for stock of the company, was not violative of the Constitution. Unity v. Burrage, 103 U. S., 458. To the same effect are a number of decisions in the State of Illinois, among them Railway v. Gregory, 15 Illinois, 20; Binz v. Webber, 81 Illinois, 288. To the same effect is the case of Mahomet v. Quackenbush, 117 United States, 508. If subjects embraced by a statute, but not specified in the title, have congruity or any connection with the subject stated in the title, or are cognate and germane thereto, the requirement of the Constitution as to title is satisfied. 23 Am. and Eng. Encyc. of Law, 238; De Witt v. San Francisco, 2 Cal., 289; Otoe County v. Baldwin, 111 U. S., 1; Smith v. Emporia, 27 Kan., 528; The State v. Miller, 45 Mo., 495.

It has been held in the State of Missouri, that an act may define all crimes of one class, and not be subject to the objection that there is more than one subject embraced in the bill. The State v. Brassfield,

84 Mo., 151. That case was overruled on one point, and one point only, in 88 Missouri, 88; but it does not affect the question involved in this case.

Applying these principles to this case, it would appear, that the subject embraced in this law under discussion was prize fights for reward. Mr. Webster and Mr. Worcester, in defining the term "prize fight," embrace not only fights between man and man, but also between man and beasts. The term "prize fight" means a fight for a prize. The act in question specifically names and prohibits a fight between man and man, and between man and beast, when had for profit. It is submitted, that the acts are so intimately connected as to form, in contemplation of the Constitution, but one subject.

In this connection, it might be well to recur to the legislative and executive construction, as well as the judicial interpretation, of this provision of the Constitution. Article 5049, Revised Statutes of 1895, was the result of one act, as will be seen by an examination of the Session Acts of 1887, beginning on page 24. In that act there is an occupation tax levied on merchants of the various classes; patent medicine vendors; fortune tellers; money brokers; photographers; auctioneers; toll-bridge keepers; ship brokers; commission merchants; land agents; lawyers; physicians of various classes, including occulists and specialists; ring devices; billiard tables; obscene literature; pool sellers; tenpin alleys; hobby horses; foot peddlers, and those travelling with one horse or with oxen; theatres, including all sorts of exhibitions; livery stables; insurance companies; lightning rod agents; cotton brokers; sewing machine agents; express companies; sleeping cars; railroad cars; telegraph companies; telephone companies; gas companies; electric light companies; loan agents; credit agencies; and skating rinks.

The amount of occupation taxes levied against these various occupations differed very widely. The tax on merchants was made to depend on the amount of their annual purchases; on some other business, on the size of the city in which they did business. Yet there is a penal clause attached to this bill, punishing every one who pursues either of the occupations named without having first paid the tax levied thereon. If a strictly literal construction were to obtain, that act, as well as all others levying occupation taxes embracing a number of objects, would be void. But under the liberal rules of construction adopted by this court, and most of the other courts, if not all of them, the act is valid, in that its general purpose is to collect occupation taxes.

The same may be said of the article in the Penal Code defining the crime of assault and battery. It was brought from the Acts of 1871 into the Penal Code in the revision, and as originally passed it presents ten distinct grounds of aggravation which will raise the offense from simple assault to aggravated assault. * * *

That act, as passed in 1871, might have been practically entitled, an act to prohibit the various kinds of fights there mentioned. And yet it has been acquiesced in for a long time as constitutional.

In the language of the authorities quoted, they are all germane to each other, relevant and cognate, and are so intimately connected as to be, within the view of the Constitution, but one subject.

It is submitted, therefore, that the statute is in all things valid.

GAINES, CHIEF JUSTICE.—These cases present substantially the same questions, and will be disposed of in the same opinion. They proceed upon the theory that article 5049 of the Revised Civil Statutes, adopted by the present Legislature at its regular session, places a tax upon prize fighting, and licenses it as an occupation. The statutes make it the duty of the tax collector of each county to issue a license for each occupation upon which a tax is levied, upon the application of any person desiring to pursue such occupation, and upon his paying the tax levied thereon; but he is prohibited from issuing such license except upon a blank furnished by the Comptroller for that purpose. It is the duty of the Comptroller to furnish him with the blanks, and it would seem that it is his right to demand the performance of that duty, and upon the Comptroller's refusal to comply, to compel such performance by the writ of mandamus.

In the first case, the tax collector of Hays County alleges, that he has demanded blank licenses for prize fights of the respondent, as Comptroller of the State, and that the latter has refused to furnish them. He prays that the latter may be compelled to comply with his demand. In the second case, the tax collector of Williamson County alleges, that application has been made to him for a license for a prize fight, and that the State and county taxes have been tendered by the applicant; that he has demanded of the Comptroller the proper blanks, and that the demand has been refused. He also prays for a peremptory writ of mandamus to compel the officer to furnish the blanks.

The Comptroller in neither case denies the facts alleged, but claims there is no law licensing prize fighting in this State.

Since these suits were instituted, the Governor of the State has convened the Legislature for the purpose of passing a law prohibiting prize fighting, and making it a penal offense. The Legislature has met in pursuance of that call, and has passed an act intended to effectuate that object, which, if valid, took effect from its passage. It is conceded, that if this act be operative, the writ of mandamus must be refused in these cases. But it is claimed, on behalf of the petitioners for the respective writs, that the act is in violation of section 35 of article 3 of the Constitution, and is therefore void. This presents the first question for our determination.

The constitutional requirement in question reads as follows: "No bill (except general appropriation bills, which may embrace the general subjects and accounts for and an account of which moneys are ap-

propriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." Omitting the emergency clause, inserted for the purpose of giving it immediate effect, the statute under consideration reads as follows:

"An Act to prohibit prize fighting and pugilism, and fights between men and animals, and to provide penalties therefor, and to repeal all laws in conflict therewith.

"Section 1. Be it enacted by the Legislature of the State of Texas: That any person who shall voluntarily engage in a pugilistic encounter between man and man, or a fight between a man and a bull or any other animal, for money or other thing of value, or for any championship, or upon the result of which any money or anything of value is bet or wagered, or to see which any admission fee is charged, either directly or indirectly, shall be deemed guilty of a felony, and upon conviction shall be punished by imprisonment in the penitentiary not less than two nor more than five years.

"Sec. 2. By the term 'pugilistic encounter,' as used in this act, is meant any voluntary fight or personal encounter by blows by means of the fist or otherwise, whether with or without gloves, between two or more men, for money or for a prize of any character, or for any other thing of value, or for any championship, or upon the result of which any money or anything of value is bet or wagered.

"Sec. 3. That all laws and parts of laws in conflict herewith be and the same are hereby repealed."

It is admitted that the subject is expressed in the title, but the contention is, that the act contains more than one subject. It was doubtless intended by section 35 to prevent certain practices sometimes resorted to in legislative bodies to secure legislation contrary to the will of the majority: one, that of misleading members, by incorporating in the body of the act some subject not named in the title; the other, that of including in the same bill two matters foreign to each other, for the purpose of procuring the support of such legislators as could be induced to vote for one provision merely for the purpose of securing the enactment of the other. Similar constitutional requirements are found in the former Constitutions of this State, and in many of the Constitutions of other States; and in construing them the courts have kept in view the evils intended to be remedied, and have uniformly held, that the provision as to one subject does not apply where two matters are incorporated in the act which are germane to each other and parts of the same general subject matter.

Let us apply this rule to the act in question. Its object is to suppress contests for physical supremacy, whether between man and man or man and beast, by prohibiting such contests, whether entered into for a prize or a wager, or as a public exhibition. The subject matter of the act is such physical contests, and it is but one subject, within the

meaning and intent of the Constitution. The fact that "a pugilistic encounter between man and man" and "a fight between a man and a bull or any other animal" are specified, makes the object of the law, nevertheless, one in legal contemplation and the subject matter single. If the Legislature, instead of entering into specifications, had defined the offense in general terms, and had particularized neither fights between men nor fights between men and beasts, it seems to us there could have been no serious question as to the validity of the law; and yet the effect of the present act is precisely the same. Let us suppose an act were passed making it a felony to steal "any domestic animal," without specifying any animal in particular, could it be doubted that such an act contained but one subject? And yet an act which declared that any person who should steal any horse or cow should be punished by confinement in the penitentiary would be less comprehensive, and could not therefore be void, as embracing more that one subject. A contrary construction would render legislation practically interminable, and would convert a wise provision of the Constitution into a serious hindrance upon the lawmaking power.

For the reasons given, we are clearly of the opinion that the act is valid. The writs of mandamus prayed for in these cases must therefore be refused. If there was any law in force at the time the petitions in these cases were filed which made it the duty of the comptroller to issue occupation blanks for prize fights, it is repealed; and the officer can not be commanded to do that which it is not now his duty to do.

But it is insisted, that if that part of article 5049 of the new Revised Civil Statutes relating to "fights between man and man" is valid, and was not repealed by that article of the revised Penal Code which prohibits prize fights, the petitioners were entitled to their remedy at the time the suits were instituted, and that therefore they should, in any event, recover their costs. But in this proposition we do not concur. These are suits at law, and in such cases the statute is peremptory. It provides, that "the successful party shall recover of his adversary all the costs expended or incurred therein, except when it is or may be otherwise provided by law." Rev. Stats. 1879, art. 1421. We know of no law that affects this provision as applied to cases of this character. If it were otherwise, in view of the labors devolved upon the court, we should not be inclined to enter upon the work of deciding the intricate questions originally involved in the suits for the purpose of determining a mere issue of costs. Robinson v. The State, 87 Texas, 562; La Coste v. Duffy, 49 Texas, 769; Gordon v. The State, 47 Texas, 208.

The writs of mandamus prayed for are refused; and each of the petitioners will pay the costs incurred in his suit.

*Writs refused.*

Delivered October 14, 1895.