On the 27th day of May, 1930, the county board of school trustees of Young county, acting upon a petition purporting to have been signed by a majority of the qualified voters of a portion (being less than 10 per cent.) of the Bullock common school district No. 12, detached from the Bullock common school district No. 12 about 1,629 acres of land, and annexed the same to the Graham independent school district, said board acting under and by authority conferred upon it in House Bill No. 25, chapter 47 of the Acts of the First Called Session of the 41st Legislature (Vernon's Ann.Civ.St. art. 2742f). The change in the boundary of the Bullock common school district No. 12 affected less than 10 per cent. of the territory of said common school district, and the trustees' order of annexation further recited that all the things necessary and prerequisite for the entering of the said order had been done. The plaintiffs below, without having first sought an appeal from the action of the county school trustees to the state superintendent, and from the state *Page 830 
superintendent to the state board of education, proceeded to file this suit, on the 6th day of August, 1930, wherein the Bullock common school district No. 12 of Young county, Tex., by and through its trustees and a number of citizens and taxpayers of said district, styled themselves plaintiffs, sued the county board of school trustees of Young county, Tex., the Graham independent school district, the county school superintendent of Young county, Tex., and the tax collector of the Graham independent school district, and the tax collector of Young county, alleging, in substance, the following facts, to wit:
1. That two of the county board members were not duly elected and were usurping power and rights of a county school trustee, and that a quorum was not present on May 27, 1930, at the time the order in question was passed.
2. Fraud in securing the signatures to the petition, and that the voters were not qualified.
3. That no notice to the Bullock common school district trustees, as provided in section 2, chapter 109 of the Acts of the First Called Session of the 41st Legislature (Vernon's Ann.Civ.St. art. 2742e), was given to said trustees.
4. That the law under which the annexation was made is unconstitutional, and that the Graham independent school district was a bonded district.
5. That the county board of school trustees abused their discretion, and that the consolidation was not for the best interest of education, and that the territory annexed was not contiguous.
The defendants answered by (a) plea to the jurisdiction; (b) plea in abatement; (c) general demurrer; (d) denial of agency under oath and a general denial. The plea to the jurisdiction and the plea in abatement and the general demurrer were all on the 19th day of September, 1930, overruled, and on the 24th day of September, 1930, the court submitted the cause on its merits to the jury upon one special issue as to whether or not the trustees of the Bullock common school district had notice of the meeting of the county board of school trustees on May 27, 1930, and the jury answered that the trustees of said Bullock common school district had not been so notified, whereupon the court entered judgment for the plaintiffs, annulling the order of annexation made by the county board of school trustees on the 27th day of May, 1930; and permanently enjoined the Graham independent school district and its trustees from exercising any dominion or control over the territory that had by said order of May 27, 1930, been detached from the Bullock common school district and annexed to the Graham independent school district, from collecting any taxes from said territory; to which action of the court the defendants excepted and gave notice of appeal, and thereafter seasonably filed its appeal bond and perfected the appeal as made and provided by law; this cause is now before this court for review and correction.
The vital questions presented on this appeal are dependent in part on the construction and validity of the following acts of the 41st Legislature at its First Called Session, which, so far as pertinent, read as follows:
"Authorizing County Board to Detach Territory from One School District and Attach it to Another. H. B. No. 25.
 "Chapter 47.
"An Act authorizing the County Board of Trustees of each organized county to detach from one and add to another school district territory contiguous to the common boundary line of the districts affected; providing for the adjustment of outstanding indebtedness; repealing laws in conflict; and declaring an emergency.
"Be it enacted by the Legislature of the State of Texas:
"Section 1. In each county of this State the County Board of Trustees shall have the authority, when duly petitioned as herein provided, to detach from and annex to any school district territory contiguous to the common boundary line of the two districts; provided the Board of Trustees of the district to which the annexation is to be made approves, by majority vote, the proposed transfer of territory and provided, further, that where the territory to be detached exceeds ten per cent (10%) of the entire district the petition must be signed by a majority of the trustees of said district in addition to a majority of the qualified voters of the territory to be detached. The petition shall give the metes and bounds of the territory to be detached from the one and added to the other district and must be signed by a majority of the qualified voters residing in the said territory so detached. Upon receipt of the said petition, duly signed, and upon notice of the approval of the proposed annexation by the Board of Trustees of the district to which the territory is to be added, the County Board of Trustees shall pass an order transferring the said territory and redefining the boundaries of the districts affected by said transfer, the said order to be recorded in the Minutes of the County Board of Trustees. Provided that no school district shall be reduced to an area of less than nine square miles.
"Sec. 2. Any outstanding indebtedness affected by changes in the boundaries of school districts shall be adjusted by the County Board of Trustees as provided in Sections 10, 11 and 12, of Chapter 84, Acts of the 40th Legislature, First Called Session. *Page 831 
"Sec. 3. All laws and parts of laws, General and Special, in conflict herewith are hereby repealed, and Sections 1, 2, 3, and 4 of Chapter 84, Acts of the 40th Legislature, First Called Session, and Article 2765, Revised Civil Statutes, 1925, are specifically repealed."
"H. B. No. 220.
 "Chapter 109.
"An Act validating the actions of the County Board of School Trustees in changing boundary lines of Common School Districts in counties having a population of not less than 9,000 nor more than 9,010, according to the United States Federal census of 1920; giving the County Board of School Trustees in all counties authority to make changes in all Common School Districts, to create Common School Districts, to subdivide districts; providing in case any provision of this Act shall be held unconstitutional or invalid then such holdings shall not affect the remaining provisions; and declaring an emergency.
"Be it enacted by the Legislature of the State of Texas: * * *
"Sec. 2. That on and after the passage of this Act the County Board of School Trustees in any county in this State shall have authority and full power to create Common School Districts, to subdivide districts, and to change boundary lines of any or all Common School Districts legally coming under the jurisdiction of the County Board of School Trustees, subject to the supervision of the District Court having jurisdiction over the county where the County Board is appointed or elected; provided that before any changes may be made in boundary lines of school districts the trustees of the Common School Districts affected shall be notified to appear before the County Board for a hearing, and after said hearing, or the date set for said hearing, the County Board of Trustees may pass such order or orders as will carry out the provisions of this Act; provided, further, that the trustees of the districts affected may appeal from the decision of the County Board to the District Court."
Both of the above acts were made effective on the same day, to wit, May 24, 1929.
Appellants first insist that the court below was without jurisdiction to hear and determine the plaintiffs' cause of action without having first exhausted remedies of appeal to the state superintendent and the state board of education. The case of Jennings v. Carson (Tex.Com.App.)220 S.W. 1090, and others of a similar trend, are cited in support of the contention. That decision was written by Section A of our Commission of Appeals in construing previous statutes, some of which were apparently conflicting and approved by the Supreme Court. The general ruling was, under article 2682, Rev.Civ.Statutes, giving "general supervisory control" to district courts, and article 2686, providing that appeals from decision of the "County Superintendent" should lie to the "County School Trustees and from the said county trustees to the State Superintendent and thence to the State Board of Education," that appeals from the action of the county school trustees refusing to form a school district under the articles cited in the opinion should first be made from the lower to the higher school authorities before the jurisdiction of the district court could be invoked. Other cases are cited in behalf of appellants as of the same effect, such as Warren v. Sanger Independent School District, 116 Tex. 183, 288 S.W. 159; Johnson v. City of Dallas (Tex.Civ.App.) 291 S.W. 972; South San Antonio Ind. School District v. Martine (Tex.Civ.App.) 275 S.W. 265; Stinson v. Graham (Tex.Civ.App.)286 S.W. 264. In determining the weight to be given these decisions, it will be well to consider the Act of the Legislature, approved March 15, 1927 (Vernon's Ann.Civ.St. art. 2686), amending article 2686, whereby it was declared, in effect, that parties desiring to appeal from the county board of school trustees were given the right to elect to appeal to any court having proper jurisdiction of the subject matter; or to the state superintendent of public instruction, etc. See Laws of 40th Legislature, page 128, c. 83.
However, without considering the effect of the amendment just referred to, the case of Chastain v. Mauldin, 32 S.W.2d 235, Chief Justice McClendon, of the Austin Court of Civil Appeals, points out exceptions to the rule now insisted upon as being those involving the constitutionality of a statute under which a school board acts, those in which no statutory authority is given for the act complained of, and those in which property or funds belonging to the school district are about to be diverted, citing the cases which so rule. See, also, Freeport Ind. School District v. Common School District, 115 Tex. 133, 277 S.W. 97; Henderson v. Miller (Tex.Civ.App.) 286 S.W. 501.
County School Trustees are declared to constitute bodies corporate by article 2683, Rev.Civ.Statutes, and are charged by law with the management of the affairs of their districts and the protection of their best interests, and their right and duty to do so is distinctly upheld in the case last above cited. Both parties to the present litigation attack the validity of the law now involved and above quoted.
The plaintiffs alleged, among other things, in substance and as quoted, that House Bill No. 25, chapter 47, "does not give the County Board of School Trustees authority to detach territory from a common school district and attach the same to an independent school district, * * * for the reason that the *Page 832 
caption of House Bill No. 25 is insufficient * * * to change the manner of adding to or taking from the territory of an independent school district."
Appellants insist, in subdivision C of their proposition No. 3, that: "House Bill No. 220, being chapter 109, First Called Session of the 41st Legislature of the State of Texas, General and Special Laws page 259, Acts of the First Called Session of the 41st Legislature which adjourned May 21, 1929, is unconstitutional in that it deals with more than one subject and fails to express in its caption the provision with reference to notice."
It is evident that a determination of the questions so presented require an exercise of judicial functions clearly not committed by the Constitution or the laws to the administrative officers of the public schools. Wide general powers are given to the state Legislature by section 1, article 7, of our Constitution, in establishing and making suitable provision for the support and maintenance of a sufficient system of public free schools, and without doubt it may establish such administrative agencies as may be necessary to attain the end in view, which was a general diffusion of knowledge among our people. See Webb County v. Board of School Trustees, 95 Tex. 137, 65 S.W. 878; Schley v. Maddox (Tex.Civ.App.) 22 S.W. 998, 999. House Bill 220, hereinbefore quoted, is the latest expression of the Legislature relating to the subject, and it, if valid, as we think, and as we shall hereinafter attempt to show, expressly confers the right of appeal to the district courts. We accordingly conclude that the contention that the court below was without jurisdiction must be overruled.
The case was tried before a jury and submitted upon a single issue, which, together with the jury's answer thereto, is as follows: "Do you find from a preponderance of the evidence that the trustees of Bullock Common School District No. 12 were not notified of the meeting of the Young County School Board to be held in Graham, Texas, on May 27, 1930? Answer: Yes."
Appellants urge that the court erred in submitting the issue of notice to the trustees of appellee district for the reason that notice, if necessary, must be presumed as a matter of law, or, if not, that the recitation in the order complained of that all prerequisites of the law had been complied with is conclusive; and, finally, that the requirement for notice contained in House Bill No. 220 is without force, in that the bill is void as to notice, since that purpose is not expressed in the bill, and for the further reason that the bill seeks to deal with more than one subject.
These questions, we think, may be disposed of more briefly. By the terms of House Bill No. 220, notice to the trustees of the Bullock common school district was plainly required, and the county board, which entered the order under consideration, evidently understood that such notice was necessary, for the order recites that notice was duly given. As it seems to us, notice to those trustees with an opportunity to be heard was essential. It may well be said that a diminution of the territory of the Bullock school district, thus decreasing the district's financial ability, could not, without due notice and opportunity to be heard, be taken away under the due process clauses of the state and federal Constitutions. Indeed, the legislative intent in the enactment of House Bill No. 220 may well be said to have been to thus supply a fatal omission in House Bill No. 25. It was not necessary, we think, to the validity of House Bill No. 220, that the purpose to require notice should be expressed in the caption, nor do we think that act invalid on the ground that it deals with more than one subject. Section 35 of article 3 of the Constitution provides that: "No bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title."
But it is uniformly held that a liberal construction will be applied in determining whether or not a statute violates this section. And it is to be noticed that the section only forbids a duplication of subjects. It has long since been held that a specification of the means by which the object of the act is to be accomplished does not infringe this section of the constitution. See Hays v. Porter, 27 Tex. 92; Tadlock v. Eccles,20 Tex. 782, 73 Am.Dec. 213. In Duncan v. Taylor, 63 Tex. 645, it was held that, under an act of 1879, relating to the assignment of insolvent debtors for the benefit of creditors, in which was included a section, invalidating all liens on stock of goods exposed for sale, in the course of trade, does not violate this section. In Giddings v. San Antonio,47 Tex. 553, 26 Am.Rep. 321, it was held that, where that part objected to can be considered as connected with or subsidiary to the main object, expressed in its title, it will be constitutional. In Johnson v. Martin,75 Tex. 40, 12 S.W. 321, it was held that this section only requires the general or ultimate object to be stated in the title, and not the details by which the object is to be obtained. See also, McMeans v. Finley,88 Tex. 521, 32 S.W. 524; Singleton v. State, 53 Tex.Cr.R. 625,111 S.W. 736. We have no doubt of the constitutional validity of House Bill No. 220. That bill, as before suggested, was supplementary to House Bill No. 25, and the requirement for notice we think plainly germane to the objects to be attained by these two bills. In no part of either bill do we find a provision to *Page 833 
the effect that a recitation in the order of the county board of school trustees would be even prima facie evidence of the fact that notice was given, and it does not appear that appellants relied upon any such contention on the trial below, for they attempted to prove the fact of notice by the introduction of witnesses who testified that cards were written and addressed to the trustees of the Bullock school district, notifying them that a meeting of the county school board was to be held where proceedings in which they were interested would be had. Each of the trustees of the Bullock school district, however, testified, without contradiction, that they received no such notice and were entirely without knowledge of the fact of the meeting, and, as already stated, the jury so found. We think the trial court entirely correct in his ruling that the proceedings under consideration were invalid for want of proper notice to the trustees of the Bullock school district.
In the case of Davis v. Petroleum Casualty Co. (Tex.Civ.App.)13 S.W.2d 981, 982, the court quoted the following from 20 R.C.L. p. 356, § 20: "Mailing of notice to a person at his known address within the state may be authorized as a mode of service, but in the absence of a statute authorizing the service of a notice by mail, a notice so served is ineffective unless it is received, though where the notice was properly mailed its receipt will be presumed in the absence of evidence to the contrary. * * * This presumption may be overcome by evidence that the notice never was in fact received."
In the case of McClure v. Georgia Casualty Co. (Tex.Com.App.)251 S.W. 800, 801, it is said: "These provisions [referring to notice under Compensation Act] of the law were before this court in a recent case for construction, and we held that, when a statute directs that notice shall be given, but is silent with reference to the manner of giving the same, personal service of such notice upon the person to whom it is required to be given is necessary."
Appellees by cross-action have assigned error to the action of the court in refusing to permit them to show by evidence tendered that the petition upon which the county board of school trustees acted had not been signed by the required number of qualified voters of the territory sought to be detached. But we think the question so presented, as well as others presented by appellees and also by appellants, may be passed without consideration or determination as immaterial, in view of our conclusions heretofore stated.
We conclude that the judgment below should be in all things affirmed.