Ex parte Bernard Eugene CRISP, Jerry
Michael Miles, Joe Lee Sewell.

Ex parte Bruce Dudley CARTER.

Nos. 1044–82, 1045–82.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 14, 1983.

Dick DeGuerin, Miles & Sewell, Houston, for Crisp.

Charles O. Grigson, Austin, Dick DeGuerin, Houston, for Carter.

Charles D. Houston, Dist. Atty., Bellville, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellants were charged with the offense of "aggravated possession of marihuana," pursuant to indictments issued alleging that each of them possessed more than 2,000 pounds of marihuana. Appellants filed a pretrial writ of habeas corpus attacking the constitutionality of House Bill 730,[1] which was passed by the Legislature in 1981 and purported to amend the Texas Controlled Substances Act, V.A.C.S., Art. 4476–15 (Supp.1982). The trial court conducted a hearing on the matter and refused to grant appellants relief. Appellants appealed to the Court of Appeals for the Third District in Austin which declared that the caption to H.B. 730 was defective, and the bill was therefore unconstitutional. *Crisp v. State*, 643 S.W.2d 487 (Tex.App.—Austin, 1982). Appellants were not released from the custody of the Fayette County Sheriff, however, since the Court of Appeals upheld the indictments under the pre-amendment version of the Texas Controlled Substances Act. The State petitioned this Court for discretionary review of the Court of Ap-

1. H.B. 730, Acts of the 67th Leg., Reg.Sess., 1981, Ch. 268, Pg. 696–708, Eff. Sept. 1, 1981.

peals' holding, which we granted on January 12, 1983.

■ The Court of Appeals held that the caption to H.B. 730 violated Tex. Const., Art. III, § 35 (1955) since it failed to provide adequate notice of the major changes contained in the body of the bill.

Art. III, § 35 of the Texas Constitution provides:

"No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which monies are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be expressed.

This constitutional provision requires that a bill's caption be specific enough to give a reasonable reader fair notice of the subject and contents of the bill. *Bates v. State,* 587 S.W.2d 121 (Tex.Cr.App.1979); *Castellano v. State,* 458 S.W.2d 73 (Tex.Cr.App.1970); *White v. State,* 440 S.W.2d 660 (Tex.Cr.App. 1969), and cases cited at 664.

■ When a statute is attacked under Art. III, § 35, the Court should construe the statute liberally so as to uphold it if possible. *Stein v. State,* 515 S.W.2d 104 (Tex.Cr. App.1974); *White,* supra. A somewhat stricter rule of conformity of title to subject matter legislated on within an act is applied to amendments in comparison to the original acts. *Bates,* supra at 128, citing *White,* supra; *Stein,* supra at 107, and cases cited therein.

The question before us is, given the constitutional provision relating to captions, does the caption of H.B. 730 which states: "AN ACT relating to offenses and criminal penalties under the Texas Controlled Substances Act," give readers fair notice of the subject matter contained in the bill. In order to resolve this question and ultimately the constitutionality of the statute, we must examine the contents of the bill vis-a-vis its caption.

Initially, the bill modified several areas of the Controlled Substances Act. The bill created two levels of offenses for possession of marihuana, one of which proscribes possession of more than 50 pounds of marihuana and is termed "aggravated" possession of marihuana. This new offense of aggravated possession of marihuana was then further divided into three additional levels of punishment. Overall, ten new sections of the Controlled Substances Act were added and at least one section was repealed.

Moreover, there were several statutes in addition to the Controlled Substances Act which were modified by the bill. Art. 42.12, § 3, V.A.C.C.P., was implicitly changed so that defendants convicted of aggravated possession could not receive probated sentences. Art. 42.12, § 3f(c), V.A.C.C.P., was modified so as to prohibit deferred adjudications for defendants convicted of aggravated ossession. Art. 44.04(b), V.A.C.C.P., and Art. 44.04(c), V.A.C.C.P., were amended so as to severely restrict the availability of bail to those defendants convicted of violating the new offenses in the Controlled Substances Act. The bill also incorporated Title 4 of the Penal Code into provisions of the Controlled Substances Act relating to aggravated offenses.

Given the bill's effect upon the Code of Criminal Procedure and the Penal Code, in addition to the changes made in the Controlled Substances Act, we must next determine whether the caption provides fair notice as to the subject and contents of the bill. A brief discussion of a similar case involving this issue is helpful. In *White,* supra, the caption to the 1967 act amending the Dangerous Drug Act, Art. 726d, V.A. P.C., read:

"An act to include lysergic acid diethylamide and other hallucinogens in the list defining 'dangerous drugs,' and specifying its possession to be an unlawful act; providing that the illegal sale, manufacture, or furnishing of any dangerous drug is unlawful; amending Subsection (a) of § 2, Subsection (d) of § 3 and § 15,

Chapter 425, Acts of the 56th Legislature, Regular Session, 1959, as amended (Art. 726d, Penal Code); and declaring an emergency." *White,* supra, at 662–3.

We noted that although the act did include hallucinogens within the definition of dangerous drugs and made their possession an unlawful act, the act also made substantial changes in the penalty provisions of the Dangerous Drug Act. Since the language of the act clearly referenced particular changes and since no fair notice was given of any intent to change penalty provisions, we held that the caption was violative of Tex. Const. Art. III, § 35, and the bill was unconstitutional. See also *Stein,* supra.

■ The caption to the bill before us refers, at best, to changes in penalties and offenses relating to the Controlled Substances Act (at worst, the bill doesn't even give notice of those changes—see concurring opinion by Judge Clinton). No mention is made of changes made in the Code of Criminal Procedure or the Penal Code. Since the caption refers to one act and has the effect of modifying at least two other separate statutes not mentioned in the caption, it does not give readers fair notice of the subject matter contained within the bill.[2] Even the most liberal construction of this caption and bill would not permit us to find that the caption fulfills Texas Constitutional requirements.

The State concedes that the purpose of Tex. Const. Art. III, § 35 is to give "fair notice" of the contents of the bill, but argues that we should apply that standard more restrictively by giving notification as to the body of the Act in a way not misleading or fraudulent. The State then argues that regardless of the standard applied, a liberal construction of the statute must be made in order to uphold the law, protect the legislature from embarrassment, and allow the benefits for which the statute was adopted to continue. Last, the State argues that the caption involved meets constitutional requirements since the Code of Criminal Procedure and the Penal Code are *related* to the subject matter of the bill. We find these arguments to be unpersuasive.

■ First, we decline to interpret the "fair notice" standard to simply require that a caption not be fraudulent. The cases cited by the State in support of its position largely deal with captions referring to two subjects. Courts have consistently held that a caption may refer to two subjects if those subjects are related. *Tabor v. State,* 34 Tex.Cr.R. 631, 31 S.W. 662 (1895) (caption referred to changes in two particular sections of the Penal Code); *McMeans v. Finley,* 88 Tex. 515, 32 S.W. 524 (1895) (caption referred to tax on prize fighting and fighting between man and animal). We hold that the "fair notice" standard with which Tex. Const. Art. III, § 35 is to be applied requires that the caption give

2. Interestingly in 1983, the Legislature passed H.B. 1191 which is substantially the same as H.B. 730, but contains the following caption:

AN ACT

relating to the revision, recodification, and reenactment of substantive and procedural laws (including, but not limited to, administrative and enforcement provisions) concerning the manufacture, distribution, dispensing, possession, and delivery of marihuana, controlled substances, and drug paraphernalia; providing penalties, amending, recodifying, and reenacting Sections 1.02, 3.08, 4.01, 4.011, 4.012, 4.03, 4.031, 4.032, 4.04, 4.041, 4.042, 4.043, 4.05, 4.051, 4.052, 4.12, 5.03, 5.05, 5.06, 5.07, 5.08, and 5.081 of the Texas Controlled Substances Act, as amended (Article 4476–15, Vernon's Texas Civil Statutes); adding a new Section 4.053 to Subchapter 4 of the Texas Controlled Substances Act, as amended (Article 4476–15, Vernon's Texas Civil Statutes); amending and reenacting Section 3f(c), Article 42.12, Code of Criminal Procedure, 1965, as amended; amending and reenacting Articles 44.04(b) and (c), Code of Criminal Procedure, 1965, as amended; repealing Sections 4.01(c) and (d), Texas Controlled Substances Act, as amended (Article 4476–15, Vernon's Texas Civil Statutes); including a saving clause; providing for expiration of certain provisions of the Texas Controlled Substances Act if not reenacted on or before December 31, 1985; and declaring an emergency.

Although the issue of the validity of this caption is not before us, we note that it more elaborately discusses the subject matter of the original bill.

reasonable notice of the contents of the bill to an average reader. See *White, supra.*[3]

■ Second, the State's argument that the caption in the instant case must be given a liberal construction so as to uphold the constitutionality of the act does not alter the position taken by this court. Granted, captions should be construed liberally so that the law may be upheld. See discussion, supra. A liberal construction requirement, however, should not be used to the extent that the Legislature is permitted to circumvent the Constitution. See *White,* supra at 665. As we have already stated, even the most liberal construction of the caption involved would not provide sufficient notice concerning the changes in statutes other than the Controlled Substances Act.

■ Last, the State's argument that the term "relating to" saves the bill from a fate of unconstitutionality because both the Code of Criminal Procedure and the Penal Code "relate" to the Texas Controlled Substances Act is totally without merit. In the broad sense of the term, all statutes relate to one another as legislative enactments of social policy. Moreover, all statutes pertaining to criminal matters relate to one another. If we were to validate the caption in this case because all criminal statutes are related, we would effectively eviscerate an entire section of our constitution. This we will not do.

Accordingly, our holding that the caption in the instant case is defective, thereby

rendering the act unconstitutional, is unchanged by the State's arguments. We now turn to the issue of what effect our holding has on the provisions of the Controlled Substances Act which the Legislature sought to amend through H.B. 730.

■ If an amendment to an act is declared unconstitutional and invalid, the original act remains in full force and effect, even if the amendment has no savings clause. *White,* supra at 667, citing *Doucette v. State,* 166 Tex.Cr.R. 596, 317 S.W.2d 200 (1958). We therefore hold that the Controlled Substances Act stands as though H.B. 730 had never been enacted.

■ Accordingly, given that the indictments in the instant case allege possession of a quantity of marihuana of more than four ounces, which was an offense under the law as it existed before H.B. 730 was passed, the judgment of the Court of Appeals is affirmed. See *Ex parte Heartstill,* 118 Tex.Cr.R. 157, 38 S.W.2d 803 (1931). Appellants shall remain in the custody of the Fayette County Sheriff to stand trial under the proper law.

## ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

CLINTON, Judge, concurring.

At issue here is sufficiency of a caption to an act of the Legislature, tested against the first sentence of Article III, § 35, Constitution of the State of Texas, *viz:*

---

3. *City of Brownsville v. Public Utility Commission,* 616 S.W.2d 402, 407 (Tex.Civ.App.—Texarkana, 1981, writ ref'd n.r.e.), stated a useful way to apply the standard:

"If [an average legislator or interested citizen] interested in legislation on a particular subject would be prompted by the title to examine the body of the bill for provisions relating to that subject, then the title is sufficient. But if he would be likely to get the impression from the title that further reading is unnecessary because the bill does not relate to that subject then the bill is unconstitutional to the extent that it deals with that

subject." *Id.,* at 407, citing *C. Hayman Construction Company v. American Indemnity Company,* 471 S.W.2d 564 (Tex.Cr.App. 1971).

When the standard is applied in this way to the instant caption, an average legislator or citizen would not be put on notice that specific provisions of the Code of Criminal Procedure or Penal Code were being modified by the Act to the extent that further reading of the bill was necessary.

"No bill ... shall contain more than *one subject,* which *shall be expressed in its title.*" [1]

We are not directly concerned with the second sentence.[2] It assumes that some subject has been expressed in the title. Thus, unless they touch on the meaning of the first sentence, decisions of the courts construing the second sentence are not too helpful in determining when a single subject has been sufficiently expressed.[3]

Reproduced in 1 General and Special Laws, 67th Legislature, Regular Session, 1981, the caption of the bill at issue is, as finally enacted:

"An act *relating* to offenses and criminal penalties under the Texas Controlled Substances Act."

*Id.,* at 696.

As the majority reads it, that phrase "refers to *changes* in penalties and offenses ...," P. 947. On the other hand, the dissent says the caption "puts a reader on notice of the *treatment* of one subject and alerts him to [ascertain] the details of that subject," characterizing it as a "signal." P. 953. In my view "relating to" does not

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. "But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

3. Many just such opinions are cited and discussed by the majority and dissent. In, e.g., *Day Land & Cattle Co. v. State,* 68 Tex. 526, 4 S.W. 865 (1887), the question was whether a caption contained more than one subject; however, though not given in the opinion, the caption there under consideration easily met both tests, for it read: "An act *to set aside the public lands* embraced within the territorial limits of the County of Greer for educational purposes, and for the payment of the public debt." Acts 1879, 16th Leg., ch. 16, p. 16, 8 Gammel's Laws of Texas 1316. Similar is *Doeppenschmidt v. I. & G.N. Rr. Co.,* 100 Tex. 532, 101 S.W. 1080 (1907): "An act *to prohibit railroad and railway companies* ... from permitting Johnson grass or Russian thistles from going to seed upon their right of way ..." *id.,* 101 S.W. at 1081.

Indeed, until fairly recently in drafting captions accepted legislative technique described a

mean "changes in" nor is it enough under the first sentence of § 35 that a caption gives a signal.[4]

Each constitution from 1845 through 1869 contained an identical general provision: "Every law enacted by the Legislature shall embrace but one *object,* and that shall be expressed in the title." The convention that drafted what became § 35 in the Constitution of 1876 revised the provision by changing "object" to "subject" and added the second sentence. When called upon to fathom that change, courts "presumed that the convention had some reason," and opined that "the word 'subject' may have been thus substituted as less restrictive than 'object.'" *Stone v. Brown,* 54 Tex. 330, 341 (1881); see *Day Land & Cattle Co. v. State,* 68 Tex. 526, 4 S.W. 865 (1887).

The metamorphosis of judicial understanding in this regard transformed "the subject-matter of the projected law," *Adams & Wickes v. San Angelo Water Works Co.,* 86 Tex. 485, 25 S.W. 605, 606 (1894) into "the nature of each particular bill," *Consolidated Underwriters v. Kirby Lumber Co.,* 267 S.W. 703, 705 (Tex.Comm.App.1924), see

bill as "An act *to* ..." However, turning a verb into a participle sufficed in some instances. Thus, in *City of Brownsville v. Public Utility Commission,* 616 S.W.2d 402 (Tex.Civ.App. —Texarkana 1981, writ ref'd n.r.e.), mentioned in both opinions, the caption stated at the outset that it was an act "*defining* public utilities and *providing for* their regulation ..." That is a clear expression of the subject of the bill.

4. Variously stated, the central theme of the decisions is that the constitutional mandate under consideration "is to facilitate and protect the legislative process by affording legislators and other interested people a ready and reasonably accurate means of knowledge of the contents of bills without their having to read the full text." *White v. State,* 440 S.W.2d 660, 664 (Tex.Cr.App.1969), quoting approvingly from *Shannon v. Rogers,* 159 Tex. 29, 314 S.W.2d 810, 814 (1958); "[o]bviously this purpose is not accomplished, if the caption, for lack of sufficient provision therein ... does not convey to the reader the necessary information," *Schlichting v. Texas State Board of Medical Examiners,* 158 Tex. 279, 310 S.W.2d 557, 561 (1958).

*Gulf Ins. Co. v. James,* 185 S.W.2d 966, 970 [5] (1945), to "the general purpose," *State v. Rodriguez,* 213 S.W.2d 877, 879 (Tex.Civ. App.—San Antonio 1948, no writ history); *State v. Rope,* 419 S.W.2d 890, 899 (Tex.Civ. App.—Austin 1967, writ ref'd n.r.e.).

From prior cases the dissenting opinion gleans a new "standard," to wit: "Notice to prevent surprise or fraud in legislation." But such prevention is merely an end sought by the constitutional mandate, not a definition to be applied to a given caption. So we look to the caption itself to determine whether it conveys to the reader information such that affords "a ready and reasonably accurate means of knowledge of the contents ...," *White v. State,* supra, at 664. *Ipso facto,* a caption that sufficiently expresses the subject of an act will not surprise or defraud, but one that fails adequately to inform well may. Judges do not resort to personal knowledge of "public debate" in order to evaluate surprise or fraud.[6]

The instant caption says only that the bill is an act *relating* to something else. It does not even tell the reader that the act is to *amend* any part of the Texas Controlled Substances Act. As stated it gives no hint of what is its "general purpose"—its proposed content. Facially abstract and ambiguous, the caption fails to convey to the reader that character and quality of information the first sentence of § 35 requires for fair notice to "legislator, lawyer or 'man on the street,'" *Schlichting v. Texas State Board of Medical Examiners,* supra, 310 S.W.2d at 561.

Accordingly, I concur in the judgment of the Court.

ODOM, J., joins.

5. "We are of the opinion that the language used in the title of the Act in question ... is not sufficient to properly advise the Legislature and the public as to the subject of the Act."

6. "[I]t is well settled that the scope of the exercise of the function of judicial notice is not coextensive with the personal knowledge of the individual judge. Personal knowledge is not judicial knowledge." Ray, Law of Evidence (Third Edition) § 152, 1 Texas Practice 195–196.

CAMPBELL, Judge, dissenting.

To the majority's noble and majestic but quixotic voyage through the uncharted waters of statute captions, with its sails purportedly cut from the very parchment of the Texas Constitution, I dissent.

These cases come to this Court on petitions for discretionary review filed by the State's Attorney from adverse rulings by the Third Court of Appeals sitting in Austin. That court granted habeas corpus relief to respondents/relators, hereinafter referred to as respondents. A majority of this Court would affirm the judgments of the Third Court of Appeals, and in doing so, declare House Bill 730 [1] unconstitutional, viz: "We hold that the 'fair notice' standard with which Texas Constitution, Article III, Sec. 35 is to be applied requires that the caption give reasonable notice of the contents of the bill to an average reader (citation omitted)."

The majority identifies the sole issue thusly:

"The question before us is, given the constitutional provision relating to captions, does the caption in H.B. 730, which states: An act relating to offenses and criminal penalties under the Texas Controlled Substances Act, give readers *fair notice* [2] of the subject matter contained in the bill?

I believe that the issue, more properly framed is: does the caption of the bill give a legislator or other reader notice of the contents of the bill, *to the end that surprise or fraud in legislation may be prevented?* The difference between the "fair notice to the average reader" standard and the "fair

1. H.B. 730, Acts of the 67th Leg., Reg.Sess., 1981, Ch. 268, Pg. 696–708, Eff. Sept. 1, 1981, hereinafter referred to as H.B. 730.

2. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

notice to the reader to the end that surprise or fraud in legislation may be prevented" standard is significant, and goes to the very heart of this dissent. The majority disregards the precise intent of Art. III, Sec. 35 and the cases interpreting it for the last one hundred and twenty years.

Historically, the impetus for the adoption of a statute caption provision was furnished by the famous "Yazoo Act" of 1798, in which a Georgia legislature, under the guise of an act for the payment of "late state troops," made large land grants to private persons. See *Giddings v. San Antonio,* 47 Tex. 548 at 556 (1877) and Jones, Statute Law Making (1926), pp. 65–68. Speaking to the purpose of Art. III, Sec. 35, the Texas Supreme Court, more than three-quarters of a century ago, opined:

> "It would be burdensome, if not intolerable, to require that the title should be as full as the act itself. The word title implies that no such requirement exists. The purpose of the constitutional provision is merely to reasonably apprise the legislators of the contents of the bill, *to the end that surprise and fraud in legislation may be prevented.*" Gaines, C.J., in *Doeppenschmidt v. International & G.N. Railroad,* 100 Tex. 532, 101 S.W. 1080 (1907). See also *Stone v. Brown,* 54 Tex. 330 at 344 (1881).

In *Albrecht v. State,* 8 Tex.App. 216 (1880) and in *Consolidated Underwriters v. Kirby Lumber Co.,* 267 S.W. 703 (Tex.Comm.App. 1924), the appellate courts of Texas referred to the purpose of Art. III, Sec. 35 as being the prevention of the *stealthy passage of legislation.* Delving even further back into Texas jurisprudence, the Supreme Court of Texas noted that in the usual case adequate notice would be given by naming the broad interest affected, such as "automobiles," "labor," "farming," or "insurance." See *Battle v. Howard,* 13 Tex. 345 (1855). More recently the appellate courts of Texas have reaffirmed the "notice to prevent surprise or fraud in legislation" standard. See *Yeary v. Bond,* 384 S.W.2d

376 (Tex.Civ.App.1965, ref. n.r.e.) (in an opinion written by the late Justice Denton) and *Anguiano v. Jim Walter Homes, Inc.,* 561 S.W.2d 249 (Tex.Civ.App.1978, ref. n.r. e.). Indeed, in an opinion relied upon by the majority, *White v. State,* 440 S.W.2d 660 (Tex.Cr.App.1969), Presiding Judge Onion opined:

> "The reason underlying the constitutional requirement is to advise the legislature and the people of the nature of each particular bill so as to prevent the insertion of obnoxious clauses which might otherwise be engrafted on it and become law. *Fraud and deception* are rendered less likely if the caption or title of an act, which is often the only part of the bill read by the busy members of the legislature, fully apprises the members of the contents of the bill itself. (citations omitted)"

In adopting a "fair notice to the average reader" standard, the majority apparently borrowed language directly from the Texarkana Court of Appeals in *City of Brownsville v. Public Utility Commission,* 616 S.W.2d 402 (Tex.Civ.App.1981). In *City of Brownsville,* supra, the then Texarkana Court of Civil Appeals dealt with the caption of the Utility Regulatory Act, although the caption itself is not set out word for word in the case. The majority in the instant case fails to point out that the Texarkana Court in *City of Brownsville,* supra, found the caption of the Utility Regulatory Act to be constitutional and stated:

> "The average legislator or interested citizen would not likely draw a distinction between public utilities and municipally owned public utilities. It is only by reading beyond the caption into the body of the Act that the reader learns that municipal utilities are defined out of the term 'public utilities' for most of the purposes of the Act. That the body of the Act must be studied to interpret the caption, as appellants would require, then Texas Constitution Art. III, Sec. 35 becomes meaningless."

Further, in *City of Brownsville,* supra, the Texarkana Court correctly noted that the general rule is that the caption should be liberally construed to uphold its validity if at all possible. See *Robinson v. Hill,* 507 S.W.2d 521 (Tex.1974) and *C. Hayman Construction Co. v. American Indemnity Co.,* 471 S.W.2d 564 (Tex.1971). Of particular significance is the majority's reliance on *City of Brownsville,* supra, for its application of Art. III, Sec. 35. In *City of Brownsville,* supra, the statute caption read as follows:

An Act defining public utilities and providing for their regulation; providing for the creation of the Texas Public Utility Commission, and the reappointment of commissioners and the fixing of their qualifications and compensation; prescribing the duties and the powers of the commissioners and the commission and Railroad Commission and the manner in which the jurisdiction and power conferred herein should be exercised; providing for employees and the salaries, duties and authority of employees; providing for reporting by public utilities; providing for territories and services; providing for regulation of public utility services and rates; providing for regulation of rates and division of revenue; providing for hearings and other procedures for regulation; defining certain offenses and providing penalties; providing procedures for public utility regulation by municipalities; providing for appeals and other procedures in the courts; providing for financing of commission operations .... " See Art. 1446(c), V.A.T.S.

As previously stated, the Texarkana Court upheld this caption, and in doing so opined:

"A reading of the caption itself provides reasonable notice that the Act relates to the regulation of public utilities."

The significance of this statement of the Texarkana Court is that the Utility Regulatory Act has but one subject, i.e., the regulation of public utilities. However, as any reader can plainly see, the caption of the Utility Regulatory Act contains many provisions as opposed to "subjects." Article III, Sec. 35 deals with the term "subject" rather than the term "provision." Thus, a statute caption may have only one subject, but may have as many provisions as is necessary to carry forth the effect of the statute. See *Beaumont v. Gulf States Utilities Co.,* 163 S.W.2d 426 (Tex.Civ.App.1942, err. ref. WOM).

In *Phillips v. Daniel,* 94 S.W.2d 1193 (Tex. Civ.App.1936), the Texas Court of Civil Appeals in Austin held that any number of provisions may be contained in the same act, and, even though they may be diverse, there is no violation of Art. III, Sec. 35 as long as they are consistent with the general subject expressed in the caption and have a relation and connection with it, either directly or indirectly. See also *Day Land and Cattle Co. v. State,* 68 Tex. 526, 4 S.W. 865 (1887).

In *Day Land and Cattle Co.,* supra, Judge Stayton opined:

"Former constitutions of this state used the word "object" in the same connection as the word "subject" is used in Art. III, Sec. 35 of the constitution now in force; but the latter word perhaps expresses more accurately the meaning and intent of the constitutional provision. As used in the constitution, the word "subject" is that which is to be dominated or controlled by the particular law. Thus considered, there can be no doubt that the subject of the act was single, and consisted of all the public land in Greer County unappropriated at the time the Act was passed; and that this subject may have been appropriated to more than one purpose or end does not affect the question.

"As said in *Tadlock v. Eccles,* 20 Tex. [782] 793: 'the intention doubtless was to prevent embracing in an act having an ostensible object, provisions having no relevancy to that object, but really designed to effectuate other and wholly different objects, and thus to *conceal and*

*disguise* the real object proposed by the provisions of an act under a *false or deceptive title.* A title or act essentially single in subject, which does not thus conceal or disguise the real purpose, is not subject to constitutional objection, although the ends intended to be reached through the one subject may be many. The decisions made under former constitutions, in which the word "object," in its ordinary signification means more nearly the same as "end" or "purpose" as does the word "subject," was used, are conclusive of this question.' (citations omitted)"

The majority finds fault with the fact that the body of H.B. 730 added ten new sections to the Controlled Substances Act and modified or amended portions of the Texas Penal Code and Code of Criminal Procedure. The naming of the article or act to be amended directs attention to *all provisions therein,* as the subject of the amending act. See *Katz v. State,* 122 Tex. Cr.R. 231, 54 S.W.2d 130; *State v. McCracken,* 42 Tex. 383; and *Schlicting v. Texas State Board of Medical Examiners,* 158 Tex. 279, 310 S.W.2d 557, reh. den. Thus, necessarily the caption would draw the reader's attention, not only to the provisions of the Controlled Substances Act itself, but also to the necessarily entertwined provisions of the Penal Code and Code of Criminal Procedure, which are embodied in the original Controlled Substances Act. See *Day Land and Cattle Co.,* supra. The majority also erroneously concerns itself with the fact that "at least one section was repealed." This fact is of no moment, because the failure to incorporate a provision for the repeal of a conflicting law in a caption of an act is not violative of Art. III, Sec. 35. See *Geffert v. Yorktown Independent School District,* 290 S.W. 1083 (Tex.Civ.App. 1926, reversed on other grounds).

Having traced the origins and historical background of Art. III, Sec. 35, it becomes obvious that the intent of this constitutional amendment, as expressed in *Tadlock v. Ec-*

*cles,* supra, beginning in 1858 and culminating in *White v. State,* supra, over one hundred years later, was to put the reader, be he a citizen or legislator, on fair notice as to the subject of a statute, *to the end that surprise and fraud in legislation might be prevented.*

Turning to the caption in the instant case in H.B. 730, the issue thus becomes whether or not the caption gives a legislator or other reader notice of the content of the bill to the end that surprise or fraud in legislation may be prevented. Expressed in another way, does the caption *conceal or disguise* the real purpose of H.B. 730 and does it contain more than one *subject matter?* The subject matter under consideration in the caption of H.B. 730 is obviously the Texas Controlled Substances Act. There is no other subject matter expressed in the caption, just as there was no other subject matter expressed in the Utility Regulatory Act in *City of Brownsville,* supra, other than the regulation of public utilities, though there were many provisions expressed in the bill. Secondly, does the caption of H.B. 730 conceal or disguise its real purpose? The caption says that it is an act relating to offenses and criminal penalties under the Texas Controlled Substances Act. It is difficult for this writer to understand how the caption in H.B. 730 would conceal or disguise anything at all. It puts a reader on notice of the treatment of one subject and alerts him to study, explore, and investigate the details of that subject. The caption actually affords a signal that is entirely conducive to informative and "aboveboard" legislative results. Additionally, this court need not operate in a vacuum in determining the question before it. This court can take judicial notice of the fact that H.B. 730, sometimes known as the "War on Drugs" legislation, was freely and liberally debated by both houses of the Texas Legislature in 1981 and freely and liberally debated by every form of news media in the state. It is certainly fair to say that the public debate over the question of the passage of H.B. 730 was as extensive as any

proposed legislation in the history of this state. In the face of this public debate, and indeed in the face of the very nature and wording of the caption itself, the respondents in the case at bar can hardly be heard to complain that they or the legislature or any other person has in some form or fashion been misled or tricked by the caption of H.B. 730. Indeed, the respondents in the case at bar have at no point even claimed that they were surprised, misled, or tricked by the caption of H.B. 730.

If the majority opinion in this case is allowed to stand, three consequences will result therefrom: (1) a new standard for the interpretation of statute captions pursuant to Art. III, Sec. 35 of the Texas Constitution will have been adopted—a standard which is nothing more than a sentence *taken out of context* in a written opinion by Judge Cornelius in *City of Brownsville,* supra—a standard that is not even a second cousin to the original intent of the constitutional provision contained in Art. III, Sec. 35; (2) over one hundred and twenty years of state decisis will be overruled in cases such as *Tadlock,* supra, *Day Land and Cattle Co.,* supra, *Beaumont v. Gulf States Utility Co.,* supra, *Phillips v. Daniels,* supra, *White v. State,* supra, *Yeary v. Bond,* supra, and *Doeppenschmidt v. International & G.N. Railroad,* supra, and these cases will no longer have any force or effect; (3) with the adoption of a "fair notice to the average reader" standard, the majority will place in jeopardy virtually hundreds of statutes enacted by the legislature over the course of the history of this republic.

It is to these consequences that I respectfully dissent.

TOM G. DAVIS, W.C. DAVIS and McCORMICK, JJ., join in this dissent.