**Jerry SHULTS, Lori Shults and Gas Pipe, Inc., Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–00482–CV.**

Court of Appeals of Texas, Dallas.

June 20, 1985.

Rehearing Denied July 31, 1985.

Mike Aranson, Frank Shor, Dallas, for appellants.

Tom Streeter, Asst. Dist. Atty., Dallas, for appellee.

Before WHITHAM, HOWELL and MCCLUNG, JJ.

WHITHAM, Justice.

Appellants, Jerry Shults, Lori Shults and Gas Pipe, Inc., appeal from a judgment ordering forfeiture of certain items of personal property as "drug paraphernalia" to the appellee, the State of Texas. Of owners' nine points of error, we find merit only in the sixth. Consequently, we conclude

that the first two of the four seizures at issue were not subject to the trial court's jurisdiction for purposes of forfeiture. Accordingly, we affirm as to the last two seizures and reverse and remand with instructions as to the first two seizures.

We first address a jurisdictional question involving the entire case. In their third point of error, owners assert lack of jurisdiction in the trial court because there is no law authorizing this cause of action in the State of Texas. In light of owners' argument, the dates events occurred become important. Dallas police officers seized various items alleged to be drug paraphernalia from the Shults' store, the Gas Pipe, on four occasions. The first seizure took place on October 29, 1981. On November 24, 1981, the State filed an original notice of seizure and intended forfeiture which, under the Texas Controlled Substances Act, TEX.REV.CIV.STAT.ANN. art. 4476–15, § 5.05 (Vernon Supp.1985), commenced the State's forfeiture action with respect to the first seizure. The remaining seizures took place on February 17, 1982, April 20, 1982, and July 26, 1982. The State filed notices of seizure and intended forfeiture with respect to these seizures, commencing forfeiture actions on each, on March 17, 1982, April 28, 1982, and August 3, 1982, respectively. All of these forfeiture actions were eventually consolidated in the present action. On October 20, 1982, trial began on the consolidated actions. The jury found that items taken in the seizures were drug paraphernalia and the trial court ordered forfeiture of those items in a judgment rendered January 6, 1983.

Owners argue that at time of trial and judgment there was no statute authorizing any of these forfeiture actions. This argument is based on two bills enacted by the 67th Legislature. The legislature, in Tex. H.B. 733, 67th Leg., 1981 TEX.GEN.LAWS 742, 744–45 (House Bill 733) provided:

> Section 5.03(a), Texas Controlled Substances Act, as amended (Article 4476–15, Vernon's Texas Civil Statutes), is amended to read as follows:

> (a) The following are subject to forfeiture as authorized by this subchapter:

> \* \* \* \* \* \*

> (7) all drug paraphernalia.

Subdivision seven was a new addition to section 5.03(a). Thus, House Bill 733 made drug paraphernalia subject to forfeiture as of September 1, 1981, the effective date of House Bill 733. In that same 1981 legislative session, the legislature again amended article 4476–15, § 5.03(a). That amendment, Tex. S.B. 394, 67th Leg., 1981 TEX. GEN.LAWS 2313, 2317 (Senate Bill 394) provided:

> Subsection (a), Section 5.03, Texas Controlled Substances Act, as amended (Article 4476–15, Vernon's Texas Civil Statutes), is amended to read as follows: "(a) The following are subject to forfeiture as authorized by this subchapter:

> \* \* \* \* \* \*

> "(7) triplicate prescription forms required by this Act to be returned to the Department of Public Safety."

Senate Bill 394 did not contain any subdivision under section 5.03(a) authorizing forfeiture of drug paraphernalia. Instead, Senate Bill 394 substituted a new subdivision seven, authorizing forfeiture of certain triplicate prescription forms, for the original subdivision seven added in House Bill 733. Senate Bill 394 became effective January 1, 1982. For all practical purposes, the Senate and House each passed the other's bill on May 29, 1981. Two years later, in the 1983 regular session, the legislature amended article 4476–15, § 5.03(a) once again. This latest amendment, Tex.H.B. 1191, 68th Leg., 1983 TEX.GEN.LAWS 2361, 2394–95 (House Bill 1191) which sets forth the version of article 4476–15, § 5.03(a), now in effect, provides:

> Section 5.03(a), Texas Controlled Substances Act (Article 4476–15, Vernon's Texas Civil Statutes), as amended by Section 10, Chapter 268, Acts of the 67th Legislature, Regular Session, 1981; Section 3, Chapter 277, Acts of the 67th Legislature, Regular Session, 1981; and Section 5, Chapter 570, Acts of the 67th

Legislature, Regular Session, 1981, is amended to read as follows:

(a) The following are subject to forfeiture as authorized by this subchapter:

\* \* \* \* \* \*

(7) all drug paraphernalia; and

(8) triplicate prescription forms required by this Act to be returned to the Department of Public Safety.

Thus, this 1983 amendment continued the original subdivision seven of House Bill 733 and renumbered subdivision seven of Senate Bill 394 so that it became subdivision eight. House Bill 1191 became effective August 29, 1983.

 Therefore, we must apply the rule of law applicable in the construction of two acts of the same session of the legislature. To state the rule, we quote the supreme court in *Wright v. Broeter*, 145 Tex. 142, 147, 196 S.W.2d 82, 85 (1946):

The rule is, that in the construction of acts of the same session, the whole must be taken and construed as one act, and to make a latter provision repeal a former, there must be an express repeal, or an irreconcilable repugnancy between them; and then the latter will control. [N]othing short of expressions so plain and positive as to force upon the mind an irresistible conviction, or absolute necessity, will justify a court in presuming, that it was the intention of the legislature that their acts passed at the same session, should abrogate and annul one another. The decent respect due a co-ordinate department of the government, would seem to forbid that such a presumption be indulged by the court. As we had occasion to say in Neil v. Keese, 'it would not be a reasonable mode of construing acts of the legislature, so to construe them as to make one act repeal another passed at the same session. It cannot be supposed that it was their intention that acts thus passed should abrogate and repeal one another.' [citation omitted].

Therefore, we must decide whether there has been an express repeal or an irreconcilable repugnancy. By its language, Senate Bill 394 did not repeal House Bill 733. Moreover, we fail to see how inclusion of "triplicate prescription forms" in Senate Bill 394 to the list of items subject to forfeiture can be repugnant to forfeiture of "all drug paraphernalia" as provided in House Bill 733. Therefore, we take and construe House Bill 733 and Senate Bill 394 as one act authorizing forfeiture of both "triplicate prescription forms" and "all drug paraphernalia." Consequently, we hold that article 4476–15, section 5.03(a), authorized the four forfeiture actions consolidated in the present case. It follows, and we so hold, that the trial court had subject matter jurisdiction over all four forfeiture actions consolidated in the present case. We overrule owners' third point of error.

 In their fourth and fifth points of error, owners complain that the affidavits failed to state facts sufficient to constitute probable cause for the issuance of search warrants and that the affidavits described the objects to be seized so broadly as to constitute a general search. We conclude that we need not address the fourth amendment exclusionary rule urged by owners. We reach this conclusion because a police officer may seize contraband which he sees in plain sight or open view if he is lawfully where he is. *Jackson v. State*, 489 S.W.2d 565, 566 (Tex.Crim.App.1972). The items seized were displayed for sale and, therefore, were in plain view. Owners' shop was a public place. TEX.PENAL CODE ANN. § 1.07(a)(29) (Vernon 1974). Therefore, the officer was lawfully in it. Drug paraphernalia is contraband. TEX. REV. CIV. STAT. ANN. art. 4476–15, § 4.07 (Vernon Supp.1985). In the officer's judgment, the items seized were such contraband. Thus, the seizures could be made regardless of the warrant. This case will determine whether the items seized were, indeed, drug paraphernalia and subject to the officer's seizure in a public place in plain view. We overrule owners' fourth and fifth points of error.

In their sixth point of error, owners complain because the proceedings with respect

to the first two of the seizures were not instituted within ten days of the respective seizures. The two seizures in question are those which occurred on October 29, 1981, and February 17, 1982. The original notices of seizure and intended forfeiture were filed November 24, 1981, for the first and March 17, 1982, for the second. Thus, the required notices of seizure and intended forfeiture were filed more than ten days but less than thirty days after the seizures.

In 1981, the Texas Legislature passed H.B. 730, 67th Leg., 1981 TEX.GEN.LAWS 696 (effective Sept. 1, 1981) (House Bill 730), amending article 4476–15. House Bill 730 extended the time period within which the State was required to file notice of seizure and intended forfeiture from ten days to thirty days after the seizure. In 1983, the court of criminal appeals held House Bill 730 unconstitutional due to a fatally defective caption. *Ex parte Crisp*, 661 S.W.2d 944, 948 (Tex.Crim.App.1983). The court further held in *Crisp* that, where an amendment to an act is declared unconstitutional and invalid, the original act remains in full force and effect even if the amendment has no savings clause. 661 S.W.2d at 948.

■ Owners assert that the effect of the holding in *Crisp* reinstated the ten-day time limit for the filing of notice of seizure and intended forfeiture by the State as to the first two seizures in the present case. The State argues that a drug paraphernalia forfeiture is a civil matter, not a criminal matter, and, therefore, this court is not bound by the decision of the court of criminal appeals in *Crisp*. The State tells us we are not bound by *Crisp* because the Supreme Court of Texas is not bound by *Crisp*. We disagree. In *Shrader v. Ritchey*, 158 Tex. 154, 309 S.W.2d 812 (1958), a court of civil appeals in effect certified to the supreme court the question of whether the court of civil appeals could reach a decision in direct conflict with a decision of the court of criminal appeals construing a penal statute. The supreme court answered that the court of civil appeals could not do so. Ordinarily, the supreme court follows the construction given to penal statutes by the court of criminal appeals since the enforcement of such statutes must be in accordance with such construction. 309 S.W.2d at 814. Indeed, the court of criminal appeals reciprocates. *See Johnson v. State*, 551 S.W.2d 379, 382 (Tex.Crim.App. 1977) in which the court stated:

> When the civil courts of this State have first construed a statute, this Court follows the policy of adopting such construction. *Jernigan v. State*, 166 Tex. Cr.R. 302, 313 S.W.2d 309 (1958). Likewise, our Supreme Court follows the same policy and accepts the construction this Court places upon criminal statutes. *Shrader v. Ritchey*, 309 S.W.2d 812 (Tex. Sup.1958).

■ We conclude that *Crisp* is controlling in the present case. Therefore, we are bound by the court of criminal appeals' ruling that since House Bill 730 is unconstitutional, the original act remains in force. Consequently, we conclude further that the ten-day rule for filing of notices of seizure and intended forfeiture was the valid time limit as to the first two seizures in the present case. It follows, and we so hold, that, since the State's notice of seizure and intended forfeiture was not filed within ten days after the first two seizures, those notices of seizure and intended forfeiture were not timely filed pursuant to the statute.

■ Thus, we reach the question of what should be our judgment as to these two forfeitures. Owners tell us in their brief that these two seizures "were not subject to the court's jurisdiction for purposes of forfeiture." We agree. Therefore, our judgment must comport with lack of jurisdiction in the trial court. The supreme court gives us two options in a situation in which the trial court lacks jurisdiction. Under both options we must reverse the judgment of the trial court. Under one option, however, we may remand the cause with the direction that it be dismissed. *Fruit Dispatch v. Rainey*, 111 Tex. 266, 232 S.W. 281, 282 (1921). Under the second option, we may render judgment dismissing

the cause. *Martin v. Commercial Standard Fire & Marine Insurance Co.*, 505 S.W.2d 799, 800 (Tex.1974). From the record in the present case we cannot determine the identity of the items seized by the State on October 29, 1981, and February 17, 1982. Consequently, we choose the first option and remand with instructions to the trial court to determine the identity of the items seized by the State on October 29, 1981, and February 17, 1982, and to dismiss the cause as to the items seized on those two dates. Therefore, we must sustain owners' sixth point of error and reverse and remand with instructions as to the October 29, 1981, and February 17, 1982, seizures.

■■■ In their seventh point of error, owners complain that the trial court's instructions to the jury allowed the jury to make its findings under the wrong burden of proof. Prior to House Bill 730, the burden of proof on the State under article 4476–15 in a forfeiture action was "beyond a reasonable doubt." House Bill 730 changed the burden on the State to "a preponderance of the evidence." The trial court charged the jury on preponderance of the evidence. Owners argue that *Crisp* requires that we reverse and remand for a new trial in order that the jury may be properly charged on "beyond a reasonable doubt" as required by article 4476–15 before enactment of House Bill 730. At oral argument, however, owners conceded that they did not object to the charge as placing the wrong burden of proof on the State. Having failed to point out to the trial court the matter to which owners objected and the grounds of their objections, owners have waived any objection they might have on the burden of proof as to the issue submitted. *Cartwright v. Minton*, 318 S.W.2d 449, 454–55 (Tex.Civ.App.—Eastland 1958, writ ref'd n.r.e.); TEX.R.CIV.P. 272, 274. Owners could have advanced the constitutional challenge asserted by Crisp in his appeal and thereby established "beyond a reasonable doubt" as the burden of proof in the present case and objected to the charge. Owners failed to do so. Therefore, we conclude that owners may not complain on appeal that the trial court allowed the jury to make its findings under the wrong burden of proof. We overrule owners' seventh ground of error.

■■■ In their eighth ground of error, owners complain that the trial court erred in refusing to instruct the jury as follows:

You are instructed that no object or item under the law is per se drug paraphernalia.

In order to find that an object or item is drug paraphernalia, the law requires that you find that the possessor or seller of the object or item actually used or intended to use the object or item in some special manner described by the law in connection with controlled substances. You are further instructed that the phrase "used or intended for use", as used herein, refers to the overt act or specific subjective intent of the possessor or seller of the object or item. In this case, the overt act or the specific subjective intent must have been part of the conduct of Respondent JERRY SHULTS or the GAS PIPE, INC., with reference to each particular item or object, and no one else.

You are instructed not to consider the uses to which an item can be put by someone other than the Respondents in this case.

The trial court instructed the jury as follows:

"Drug paraphernalia" means equipment, a product, or a material of any kind that is used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, or concealing a controlled substance in violation of this Act or in injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this Act. It includes, but is not limited to:

(A) a kit used or intended for use in planting, propagating, cultivating, grow-

ing, or harvesting any species of plant that is a controlled substance or from which a controlled substance can be derived;

(B) a kit used or intended for use in manufacturing, compounding, converting, producing, processing, or preparing a controlled substance;

(C) an isomerization device used or intended for use in increasing the potency of any species of plant that is a controlled substance;

(D) testing equipment used or intended for use in identifying or in analyzing the strength, effectiveness, or purity of a controlled substance;

(E) a scale or balance used or intended for use in weighing or measuring a controlled substance;

(F) a diluent or adulterant, such as quinine hydrochloride, mannitol, mannite, dextrose, or lactose, used or intended for use in cutting a controlled substance;

(G) a separation gin or sifter used or intended for use in removing twigs and seeds from or in otherwise cleaning or refining marihuana;

(H) a blender, bowl, container, spoon, or mixing device used or intended for use in compounding a controlled substance;

(I) a capsule, balloon, envelope, or other container used or intended for use in packaging small quantities of a controlled substance;

(J) a container or other object used or intended for use in storing or concealing a controlled substance;

(K) a hypodermic syringe, needle, or other object used or intended for use in parenterally injecting a controlled substance into the human body; and

(L) an object used or intended for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:

(i) a metal, wooden, acrylic, glass, stone, plastic, or ceramic pipe with or without a screen, permanent screen, hashish head, or punctured metal bowl;

(ii) a water pipe;

(iii) a carburetion tube or device;

(iv) a smoking or carburetion mask;

(v) a chamber pipe;

(vi) a carburetor pipe;

(vii) an electric pipe;

(viii) an air-driven pipe;

(ix) a chillum;

(x) a bong; or

(xi) an ice pipe or chiller.

■■■ Thus, the trial court tracked the statute, article 4476–15, § 1.02(29) (Vernon Supp.1985). We conclude that this was sufficient. *Coleman v. State*, 481 S.W.2d 872, 874 (Tex.Crim.App.1972). When words or terms are specially defined by statute thereby giving them a meaning different from their common or ordinary meaning, if any, it is undoubtedly, we think, a sufficient compliance with the statute to give the statutory definitions. *Traders & General Ins. Co. v. Weatherford*, 124 S.W.2d 423, 431 (Tex.Civ.App.—Eastland 1939, writ dism'd judgmt cor.). Furthermore, a trial court has considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). Moreover, TEX.R.CIV.P. 277 admonishes the trial court that it "shall not in its charge comment directly on the weight of the evidence." A charge should not be couched in terms of the victory or defeat of one of the parties. *See Mobil Chemical Co.*, 517 S.W.2d at 256. Applying these principles to the nature of owners' objections to the charge, the content of owners' requested instruction and the facts and circumstances of the present case, we conclude that the trial court properly instructed the jury and did not err in failing to instruct the jury as requested by owners. We overrule owners' eighth point of error.

■■■ In their first and second points of error, owners contend that there was no evidence, or insufficient evidence, to support a finding that the items introduced into evidence were "drug paraphernalia." A "legally insufficient" point is a "no evidence" point presenting a question of law. In deciding that question, the appellate

court must consider only the evidence and their inferences tending to support the finding and disregard all evidence and inferences to the contrary. If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). In reviewing "factually insufficient evidence" points we consider all the evidence, including any evidence contrary to the judgment. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980).

The inquiry focuses upon the single issue submitted to the jury. This issue and the jury's answer are as follows:

Do you find from a preponderance of the evidence that the following described items that were seized at 4435 Maple Avenue, are drug paraphernalia as that term is defined above? Answer "Yes" or "No" on each line below.

| | | |
|---|---|---|
| A. | Bongs | Yes |
| B. | Roach clips | Yes |
| C. | Power hitters | Yes |
| D. | Scales | Yes |
| E. | Wood pipes | Yes |
| F. | Glass pipes | Yes |
| G. | Metal pipes | Yes |
| H. | Stone pipes | Yes |
| I. | Smoking stones | Yes |
| J. | Kits which include a razor blade, mirror, tube, vial, and spoon | Yes |
| K. | Snorting Tubes | Yes |
| L. | Vial with spoon | Yes |
| M. | Spoons | Yes |
| N. | Mirrors with grooves | Yes |
| O. | Sifters | Yes |
| P. | Mary gin Separation gin | Yes |
| Q. | Cutting agents | Yes |
| R. | Heat testers for melting point | Yes |

We begin the inquiry by noting that the legislature has given direction to the courts in determining whether an item is "drug paraphernalia." Recognizing that intent on the part of seller or possessor would present difficulties for the courts, the legislature by article 4476–15, section 5.15, provided:

Sec. 5.15. In considering whether an item is drug paraphernalia under this Act, a court or other authority shall consider, in addition to all other logically relevant factors, but subject to current rules of evidence:

(1) statements by an owner or by anyone in control of the object concerning its use;

(2) the existence of any residue of controlled substances on the object;

(3) direct or circumstantial evidence of the intent of an owner or of anyone in control of the object to deliver it to persons whom he knows or should reasonably know intend to use the object to facilitate a violation of this Act (the innocence of an owner or of anyone in control of the object as to a direct violation of this Act does not prevent a finding that the object is intended for use or designed for use as drug paraphernalia);

(4) instructions, oral or written, provided with the object concerning its use;

(5) descriptive materials accompanying the object which explain or depict its use;

(6) the manner in which the object is displayed for sale;

(7) whether the owner or anyone in control of the object is a supplier of similar or related items to the community, such as a licensed distributor or dealer of tobacco products;

(8) direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

(9) the existence and scope of uses for the object in the community;

(10) the physical design characteristics of the item; and

(11) expert testimony concerning its use.

Article 4476–15, section 1.02(29) defines "drug paraphernalia" as:

[E]quipment, a product, or a material of any kind that is *used or intended for use* in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing,

packaging, repackaging, storing, containing, or concealing a controlled substance in violation of this Act or in injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this Act. [emphasis added].

A fair reading of the statute as a whole indicates that the intent in "intended for use" is that of the person against whom the State is acting. *See Casbah, Inc. v. Thone,* 651 F.2d 551, 559 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982). No item is drug paraphernalia absent the requisite intent to use it in connection with controlled substances. *Casbah,* 651 F.2d at 560. To assist us in deciding whether the seized items in the present case were "intended for use" in any of the proscribed connections with controlled substances, we look to the evidentiary rules set forth in article 4476–15, section 5.15. Accordingly, we shall present the evidence that these items were intended for use in these connections according to an outline which basically follows section 5.15's evidentiary rules.

### Statements of Owner Concerning Items' Use, Knowledge of Intended Use

■ Jerry Shults admitted in testimony that he believed that "some people probably smoke marijuana out of" the pipes he sold in his store. This statement is evidence that Shults knew or reasonably should have known that people to whom he delivered these items intended to use them with drugs. Therefore, this testimony is evidence under section 5.15(3) that owners intended the items for use with drugs.

### Residue

■ The police found pipes containing marijuana residue in an office adjacent to the store. Jerry Shults admitted in testimony that a customer might have returned the residue-laden pipes to the store. Thus, Shults implicitly admitted that owners sold pipes which were substantially the same as the ones with residue.

### Instructions

There were instructions accompanying a seized snorting device with attached spoon that showed how to use the device with cocaine. There were instructions for use with marijuana accompanying one bong and instructions accompanying another bong on its use with "miracle substance." A seed separator had with it instructions on its use with marijuana. Instructions for a heat tester listed melting points for a wide variety of controlled substances and "cutting agents" (substances used to dilute or "cut" drugs).

### Explanations or Depictions of Use

The Gas Pipe sold books and magazines about drug use, posters, belt buckles, and T-shirts that displayed drug-related scenes, and even games about drug use. Some of the books and magazines contained articles or advertisements explaining, recommending, or depicting uses of various seized items with drugs. A book on drug use recommended mannitol (a substance seized from the store) as a cutting agent for cocaine. A "High Times" magazine taken from the store explained the advantages of using scales to weigh drugs and the methods of using scales to weigh marijuana. A magazine advertisement for a vial with spoon that had been introduced into evidence called the device "coca paraphernalia." A "marygin" like those introduced into evidence was advertised as a "cannabis cleaner;" mannite (like that seized) was advertised as "cut" and "paraphernalia." There were advertisements showing clips and spoons for use in smoking marijuana and snorting cocaine. An advertisement in "High Life" magazine showed how to use a "Power Hitter" with marijuana and gave the advantages of using it with marijuana. There were, in the magazines, advertisements connecting bongs with marijuana use, recommending scales for use in weighing drugs and showing how to use pipes like some of those seized with marijuana. There was also an advertisement in "High Times" for a heat tester, although the record does not show that the advertise-

ment itself connected the device to drug use.

### Inscriptions or Insignia on Items

Many seized items introduced into evidence had a marijuana leaf insignia on them, the words "marijuana" or "cocaine" inscribed on them, or various slang terms for marijuana, cocaine, or other controlled substances inscribed on them. The following kinds of items, which were all alleged to be paraphernalia, had such insignia or inscriptions on them: pipes, mirrors, clips, bongs, power hitters, and the marygin. In addition, a vial with spoon came in a box that had a slang term for cocaine on it, and a heat tester introduced into evidence had inscribed on it melting points for cocaine, mannitol, and heroin.

### Manner of Display

There were marijuana leaves on the sign painted on the store's front window. A mirror set prominently in a store display case read "Cocaine." Sifters were among the items found in this display case. There were also burlap bags on the wall saying "Marijuana."

### Sale of Innocent Items Along With Suspect Items

An expert on pipe smoking and tobacco-related products who had been in the store one month before the July 26, 1982, seizure testified that he saw in the store only one package of pipe tobacco and two packages of cigarette tobacco. A police officer present at the July 26, 1982, seizure, testified that he saw only twelve packages of tobacco in the store. The expert on tobacco-related products also testified that he saw in the store no cigars or cigarettes and none of the tools which legitimate pipe smokers normally use. Furthermore, turning to a different kind of product, Shults admitted in testimony that he sold mannitol, but no diapers, even though mannitol's non-drug-related use is as a baby laxative.

The testimony of the Gas Pipe's accountant was even more significant. He testified that prior to the October 29, 1981,

seizure, the Gas Pipe's inventory had a value of $63,157.19. The accountant adjusted this figure down to $10,000.00 at the end of 1981. He testified that $10,000.00 was the estimated value of the inventory that was not possibly subject to seizure. Thus, according to the Gas Pipe's own reckoning, out of the $63,157.19 pre-seizure inventory, only $10,000.00 worth was innocent without question, and not possibly subject to seizure. The rest was at least suspect.

### Expert Testimony: Physical Design as Related to Use in the Community

According to the State's expert on pipe smoking, the vast majority of the pipes he had seen in his visit to The Gas Pipe were unsuitable for tobacco smoking. There were several reasons for this. The bits on the pipes were not flat, thus, the pipe smoker could not comfortably hold the pipe in his mouth. The pipes had no filters; thus, the smoke would be extremely harsh. Also, the bowls were too small to hold enough tobacco. Since the jury had the opportunity to look at items representing each different physical design characteristic found among the items which the State sought to have forfeited, the jury was able to judge for itself whether all the wood, glass, metal and stone pipes had the physical design characteristics which, according to the expert's testimony, would make them unsuitable for tobacco smoking. There was also testimony from another witness on the utility for cocaine snorting of the grooves in the mirrors. Cocaine users could, and customarily did, line the cocaine up in a "rail" in the groove and then snort it.

### Other Expert Testimony on Use in the Community

Police officers who testified as experts on illicit drug use testified that all the kinds of items listed in the special issue's categories "A" through "R" were in fact used with controlled substances (although, of course, the officers did not refer in their testimony to the special issue). One officer

even testified that he had seen people buy some such items at The Gas Pipe and then later use them with controlled substances. Moreover, there was testimony from these experts with respect to all the kinds of items listed in the special issues categories "A" through "R" that, excluding the scales, the experts had never seen these kinds of items used in any way except in connection with controlled substances.

### Physical Design Characteristics and Completeness of Proof

There was, again, testimony that the items introduced into evidence and displayed before the jury represented all the physical design characteristics found in the totality of the seized items which the State sought to have forfeited. Thus, the evidence given on particular items introduced into evidence is also applicable to all the seized items which fall into the same category or, equivalently, are called the same thing. Thus, for example, evidence relating to a "sifter" introduced into evidence is also applicable to all items seized on April 20, 1982, and July 26, 1982, which are also called "sifters," even though those items might not themselves have come into evidence.

### Miscellaneous

There was testimony that a store called "Jay Lee's Head Shop" contained substantially the same merchandise as The Gas Pipe. There was also testimony that "head shop" is the slang term for a store that sells drug paraphernalia.

Considering all the evidence, we conclude that the evidence was sufficient to prove that the seized items falling into the special issue's categories "A" through "R" were "intended for use" in the statutorily listed connections with controlled substances and were, therefore, "drug paraphernalia." We overrule owners' first and second points of error.

In their ninth ground of error, owners complain that the trial court erred in failing to submit individual issues to the jury as to each item seized. Prior to submission of the charge, owners requested that special issues be submitted with respect to each and every item seized, sought to be forfeited and introduced into evidence. Owners argue that no item is per se drug paraphernalia. Owners insist that items are innocent until coupled with the intent to use those items with a controlled substance. Owners maintain that "intent" is the subjective intent on the part of the seller or possessor, and no one else. In support of their position, owners rely upon *Tobacco Accessories & Novelty Craftsmen Merchants Association of Louisiana v. Treen*, 681 F.2d 378 (5th Cir.1982); *Casbah, Inc. v. Thone*, 651 F.2d 551; and *Atkins v. Clements*, 529 F.Supp. 735 (N.D.Tex.1981). Thus, owners complain that in the present case the jury was directed to look at various categories and, therefore, was under no compulsion to determine whether the requisite intent accompanied each item as the law requires.

We note that the three cases cited by owners all involve constitutional challenges to "drug paraphernalia" forfeiture provisions of the involved statutes. The present case raises no constitutional issues. We conclude, therefore, that we may address owners' ninth point without regard to issues that might arise should constitutional questions be presented. Furthermore, we again point out that the legislature, by enacting article 4476–15, section 5.15, has given direction to the courts in determining whether an item is "drug paraphernalia." The legislature's power to enact laws is limited only by the State and Federal Constitutions. Under our system of government the legislature has the power to pass any and all laws which to it may seem proper, so long as same violate no provisions of our State or Federal Constitutions. *Ex parte Halsted*, 147 Tex.Crim. 453, 182 S.W.2d 479, 482 (1944). In the present case, no constitutional challenge is made to article 4476–15, section 5.15. Thus, we again consider the legislature's directions to the courts in determining whether items are "drug paraphernalia."

The legislature directs that we "shall consider," in addition to other factors, certain circumstances. With respect to these circumstances, we read article 4476–15, section 5.15, as instructing the courts to hear the "background music" in determining whether an item is drug paraphernalia. Under our disposition of owners' first and second points of error, we played the background music. This "background music" was in evidence and considered by the jury as they considered their answer to the special issue as submitted. Therefore, we conclude that the jury was not required to focus on each object. Instead, we conclude that the statute permitted the jury to focus on all items collectively and to consider all items collectively in light of the circumstances attendant to them at the time of seizure. Thus, we conclude further that the trial court did not err in submitting the special issue by "the physical design characteristics of the item." Article 4476–15, section 5.15(10). Consequently, we hold that the trial court was not required to submit individual issues to the jury as to each item seized and that the trial court did not err in the form of submission of the special issue. We overrule owners' ninth point of error.

We affirm the judgment of the trial court insofar as it forfeits the items seized by the State on April 20, 1982, and July 26, 1982, and orders that these items be disposed of in accordance with article 4476–15, section 5.08. We reverse the judgment of the trial court insofar as it forfeits the items seized by the State on October 29, 1981, and February 17, 1982, and orders that these items be disposed of in accordance with article 4476–15, section 5.08 and we remand the case to the trial court with instructions to determine the identity of the items seized by the State on October 29, 1981, and February 17, 1982, and to dismiss the cause as to the items seized by the State on October 29, 1981, and February 17, 1982. With respect to the items seized on October 29, 1981, and February 17, 1982, our disposition of the present case does not foreclose the State from pursuing its remedies under the Tex-

as Controlled Substances Act, article 4476–15, as it now exists or is hereafter amended. All costs in the trial court and in this court are taxed one-half against owners and one-half against the State.