ONE THOUSAND FOUR HUNDRED SIXTY-TWO DOLLARS IN UNITED STATES CURRENCY AND ONE 1982 BUICK, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–01370–CV.

Court of Appeals of Texas, Dallas.

June 5, 1989.

Rehearing Denied July 24, 1989.

---

**18**

Bruce Anton, Dallas, for appellant.

Dale Jensen, Dallas, for appellee.

Before STEWART, ROWE and OVARD, JJ.

STEWART, Justice.

John Robert Robinson appeals from the judgment of the trial court that awarded $1,462 and one 1982 Buick to the State pursuant to a drug forfeiture action under article 4476–15, sections 5.03 to 5.08 of the Texas Controlled Substances Act.[1] Robinson in three points of error contends that section 3.10 of the act is impermissibly vague and overbroad under the state and federal constitutions, that section 2.09 of that article is an unconstitutional delegation of authority to the judiciary under state and federal constitutions, and that there is no evidence to support the finding that the drug Robinson possessed was an analogue of 3, 4–methylenedioxy amphetamine. We affirm.

The case was submitted to the trial court on stipulated evidence as follows. Robinson was arrested by the Dallas Police Department outside a nightclub on February 19, 1988, after he sold a tablet of 3, 4–methylenedioxy ethamphetamine to an undercover officer for $25. Robinson was ob-served selling tablets in plastic baggies to several other persons prior to his arrest. When arrested, Robinson had twelve baggies of tablets as well as $1,462 in cash. All of the sales had taken place while he was seated in his car, a 1982 Buick. The analysis report by the Southwestern Institute of Forensic Sciences stated that the tablets were 3, 4–methylenedioxy ethamphetamine, an analogue of 3, 4–methylenedioxy amphetamine.

■ In his third point, Robinson contends that there is no evidence to support the trial court's finding that 3, 4–methylenedioxy ethamphetamine (MDEA or Eve) is an analogue of 3, 4–methylenedioxy amphetamine (MDA). He argues that there is no showing of the "relative valences or atomic weights of the two chemicals" and that there is no proof of the effect of Eve.

When reviewing a "no evidence" challenge, we must consider only the evidence and reasonable inferences drawn therefrom, which, when viewed in their most favorable light, support the jury verdict or court finding. This court must disregard all evidence and inferences to the contrary of the fact finding. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986). If there is more than a *scintilla* of evidence to support the finding, the no evidence challenge fails. *Stafford,* 726 S.W.2d at 16. When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, no evidence. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). However, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact, it amounts to more than a scintilla of evidence. *Id.*

Section 3.10(a) of the Controlled Substances Act provides:

A controlled substance analogue, the chemical structure of which is substan-

---

1. All textual statutory references hereafter are to the Texas Controlled Substances Act, TEX. REV.CIV.STAT.ANN. art. 4476–15 (Vernon Supp.1989).

tially similar to the chemical structure of a controlled substance in Schedule I of this Act or Penalty Group 1 of this Act or which was specifically designed to produce an effect substantially similar to, or greater than, the effect of a controlled substance in Schedule I of this Act or Penalty Group I of this Act, all or part of which is intended for human consumption, shall be treated for the purposes of this Act as a controlled substance in Penalty Group I of this Act.

TEX.REV.CIV.STAT.ANN. art. 4476–15 § 3.10(a). The trial court held that Eve is an analogue of MDA, which is a controlled substance listed in Schedule I. *Id.* § 2.03(d). Robinson argues, pursuant to the alleged definition of "analogue" found in Webster's New Collegiate Dictionary (1973), that the State must show that Eve is a chemical compound similar to MDA, by proof of the relative valences or atomic weights of these compounds. Further, pursuant to section 3.10, he argues that the State must show the effect of Eve on the user.

With respect to his contention that the State was required to show the effect of Eve, a simple reading of section 3.10(a) shows this is incorrect. The statute states that an analogue is to have a chemical structure substantially similar to that of a controlled substance in Schedule I or Penalty Group I, *or* is to have been designed to produce a substantially similar effect to a substance in that schedule or group. The State need not show *both*.

This case was tried by stipulated evidence. Attached to the stipulation of evidence, which was signed by the State and defense attorneys, are analyses of the tablets taken from Robinson. The stipulation refers to these analyses and states that "the results of [the tablet analyses] are attached hereto as Exhibit A, *and are incorporated for all purposes.*" (Emphasis added.) Both analyses include the statement: "the ... tablets contained 3, 4–methylenedioxy ethamphetamine (MDEA) *which is an analogue of 3, 4–methylenedioxy amphetamine.*" (Emphasis added.) In addition, Robinson's expert testified that Eve is "structurally related to two other controlled substances, including 3, 4–methylenedioxy amphetamine." Viewing this evidence and reasonable inferences drawn therefrom in their most favorable light, there is more than a scintilla of evidence to support the finding of the trial court that Eve is an analogue of 3, 4–methylenedioxy amphetamine. Robinson's third point is overruled.

■ In his first point of error, Robinson contends that section 3.10 is impermissibly vague and overbroad. Specifically, Robinson asserts that an analogue is defined, in chemistry terms, as a chemical compound structurally similar to another, but containing *a single element of the same valence and atomic weight as the element it replaces.* (Emphasis in Robinson's brief.) WEBSTER'S NEW COLLEGIATE DICTIONARY 41 (1973). Based on *this definition,* Robinson argues that, because section 3.10 does not include the underlined qualifiers, it broadens the concept of an "analogue" to undeterminable proportions. He further contends that the only standard in this section for determining if a substance is an analogue of a controlled substance is whether the chemical structure of the substance or its effect on the body is "substantially similar" to that of a controlled substance. He asserts that without a definition of "substantial similarity," the court must determine its meaning by considering such variables as the degree of discrepancy in valences and atomic weights allowable in determining similarity, whether mirror images constitute a "similar structure," and whether atomic weight similarity is measured in absolute terms or by relative weight. Robinson further argues that, because there is no ascertainable standard to determine the meaning of the term "substantially similar," the term "analogue" is unconstitutionally vague. Therefore, he concludes, the public is left to guess as to its criminal liability and the statute encourages arbitrary and erratic arrests and convictions, rendering the statute void for vagueness. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

As noted above, we need not consider that portion of the Controlled Substances Act dealing with the "substantially similar" effect on the body because the stipulated evidence only provides proof based on chemical structure. Likewise, we limit our consideration to subsection (a) of section 3.10 because the analogue involved in our case fits the description contained therein since it is stipulated to be an analogue of a controlled substance listed in Schedule I of the act. We will not pass on the validity of any part of the Controlled Substances Act which is not shown to have been violated, nor will we decide constitutional issues on a broader basis than the record requires. *Threlkeld v. State,* 558 S.W.2d 472, 474 (Tex.Crim.App.1977).[2]

In his argument, Robinson treats the clause modifying a "controlled substance analogue" in section 3.10(a) as a definition of that term. Actually, the statutory definition of a "controlled substance analogue" appears in section 1.02(5) of the act. However, the language under attack in the modifying clause in section 3.10(a) also appears in section 1.02(5)(A). Because section 3.10(a) contains definitional language, we will consider Robinson's argument that the use of the term "substantially similar" renders the word "analogue" unconstitutionally vague. Of course, it necessarily follows that if we find the use of that term in section 3.10(a) too vague, then the corresponding language in section 1.02(5)(A) is also unconstitutionally vague.

We first address Robinson's contention that section 3.10(a) is overbroad. This type of attack is traditionally reserved for complaints of alleged first amendment violations. *Bynum v. State,* 767 S.W.2d 769, 772 (Tex.Crim.App.1989) (not yet reported).

Robinson does not allege how section 3.10(a) improperly penalizes speech or conduct protected by the first amendment; therefore, his contention that section 3.10(a) is impermissibly overbroad is without merit. *Id.*

However, a vagueness challenge is applicable to all criminal laws, because crimes must be defined in advance to give individuals fair notice of what activities are forbidden, which is essential to due process. *Id.* at 773. Thus, in examining a criminal statute for vagueness, we must focus upon a concept of fairness. *Id.* The first inquiry is whether the ordinary, law-abiding individual would have received sufficient information that his or her conduct risked violating a criminal law. *Id.* at 773–74. Further, when no first amendment rights are involved, the appellate court need only scrutinize the statute to determine whether it is impermissibly vague as applied to Robinson's specific conduct. Hence, Robinson must show that in its operation, the statute is unconstitutional to him in his situation; that it may be unconstitutional as to others is not sufficient. *Id.* at 774.

A statute is not unconstitutionally vague merely because words or terms are not specifically defined. *Engelking v. State,* 750 S.W.2d 213, 215 (Tex.Crim.App.1988). If the application of the standard rules of statutory construction provide clarity of meaning, a statute is not unconstitutionally vague. *Id.* One such rule is that undefined statutory terms are to be given their plain and ordinary meaning. *Floyd v. State,* 575 S.W.2d 21, 23 (Tex.Crim.App. 1978). Another relevant rule is that words defined in dictionaries and with meanings so well known as to be understood by a

---

**2.** We recognize that a drug forfeiture action is a civil proceeding having civil consequences rather than criminal penalties. TEX.REV.CIV. STAT.ANN. art. 4476–15, § 5.03. However, the basis of the forfeiture action is the appellant's involvement in a criminal act. Thus, we are frequently required to address criminal matters in these civil proceedings. *See, e.g., Shults v. State,* 696 S.W.2d 126, 131 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (discussions of probable cause). In this case, appellant complains of the unconstitutionality of a criminal section, rather than the civil forfeiture sections of the Con-

trolled Substances Act. The Texas Court of Criminal Appeals has frequently considered these constitutional issues; we were unable to find any Texas Supreme Court authority construing this criminal statute. Not surprisingly, the parties cite cases from the Texas Court of Criminal Appeals as support for their arguments. Although these cases may not be binding in a civil proceeding, we find them very persuasive authority, given that Court's expertise in this area. Thus, we, too, cite to cases from the Court of Criminal Appeals.

person of ordinary intelligence are not considered vague and indefinite. *Id.*

The words "substantially" and "similar" are defined in dictionaries and their meanings are well known; therefore, these words individually and in combination are not vague and indefinite. *Id.* Likewise, the word "analogue" is defined in dictionaries. Indeed, Robinson bases his argument on a dictionary definition, albeit an incorrect statement of the definition found in his cited source. The correct definition is:

A chemical compound structurally similar to another but *differing often* by a single element of the same valence and group of the periodic table as the element it replaces.

WEBSTER'S NEW COLLEGIATE DICTIONARY 41 (1973) (emphasis added). Thus, this definition of "analogue" only requires a compound "structurally similar" to another and then explains how the two *often differ*. A similar definition is found in The Oxford Dictionary:

3. *Chem.* an organic compound with a molecular structure closely similar to another (typically differing in one atom or group).

THE OXFORD ENGLISH DICTIONARY 431 (2d ed. 1989). We conclude that the term "substantially similar" in relation to chemical structure comports with these dictionary definitions of "analogue." Indeed, the use of "substantially similar" in structure is more specific than the definition in Robinson's cited source. Further, to require the term "analogue" to be defined in terms of valence, atomic weights, mirror images and absolute or relative atomic weights, as Robinson contends, would not aid a law-abiding person of ordinary intelligence to ascertain whether a given substance was a prohibited "analogue." *See Pope v. State,* 667 S.W.2d 163, 165–66 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd), *cert. dism'd,* 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 7 (1984). We hold that the use of the term "substantially similar" as to the chemical structure in section 3.10(a) gives a person of ordinary intelligence fair notice of the substances which are to be treated as controlled substances in Penalty Group 1. Accordingly, this subsection gave Robinson sufficient information that his conduct of possessing and selling Eve risked violating a criminal law. We further hold that the use of that term in the manner discussed provides adequate guidance to law enforcement authorities, obviating arbitrary and erratic arrests and convictions. *Bynum,* at 775. Consequently, section 3.10(a) is not unconstitutionally void for vagueness, particularly with regard to Robinson's specific conduct. The interests of the criminal defendant are preserved because the State must prove beyond a reasonable doubt that the substance involved is substantially similar in chemical structure to a controlled substance in Schedule I or in Penalty Group 1. *Id.* at 775–76.

Robinson also argues that section 3.10(a) is void because it is possible for a given substance to be "substantially similar" *to some degree* to more than one controlled substance, each of which may carry a different penalty, and, therefore, the prosecutor has the unfettered discretion in choosing the penalty range under which to indict. *Adley v. State,* 718 S.W.2d 682, 684–85 (Tex.Crim.App.1986). Robinson's argument assumes that a substance can be an *analogue* to more than one other substance. There is no evidence in the record to support this assumption. We cannot accept allegations in briefs as fact if they are not supported by the record. *Morin v. State,* 682 S.W.2d 265, 267 (Tex.Crim.App. 1983). Consequently, we do not address this contention. Robinson's first point is overruled.

In his second point of error, Robinson contends that, because a trial judge must hear evidence and evaluate the "effect" of a compound under section 3.10(a), the trial court is required to perform duties delegated to the Commissioner under section 2.09 of the Controlled Substances Act. He maintains that through this substitution of duty, section 2.09 is an unconstitutional delegation of legislative authority to the judiciary under the state and federal constitutions. The forfeiture in this case was

based on Robinson's possession of a structural analogue and the proof showed that the substance involved was a structural analogue. The effect of a compound under section 3.10 is not involved in this case. Robinson cannot question the constitutionality of a portion of a statute with which he has not been charged or convicted. *Threlkeld*, 558 S.W.2d at 474. We overrule point of error two.

We affirm the trial court's judgment.