

## Office of the Attorney General
### State of Texas
January 28, 1993

**DAN MORALES**
ATTORNEY GENERAL

Honorable Jim Tallas
Chairman
Committee on Financial Institutions
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-202

Re: Whether the Public Funds Investment Act, V.T.C.S. article 842a-2, authorizes cities, counties, and certain other public entities to invest public funds in mutual funds holding only adjustable rate mortgages that United States agencies have issued   (RQ-334)

Dear Representative Tallas:

You have requested an interpretation of section 2 of the Public Funds Investment Act of 1987 (the "PFIA"), V.T.C.S. article 842a-2. Section 2 states in pertinent part as follows:

> (a) An incorporated city or town, a county, a public school district, a district or authority created under Article III, Section 52(b)(1) or (2), or Article XVI, Section 59, Texas Constitution, an institution of higher education as defined by Section 61.003 of the Education Code, a hospital district, a fresh water supply district, or any nonprofit corporation acting on behalf of any of those entities may, in accordance with this Act, purchase, sell, and invest its funds and funds under its control in the following:

> (1) obligations of the United States or its agencies and instrumentalities;[1]

---

[1] The seventy-first legislature amended section 2(a) four times. *See* Acts 1989, 71st Leg., ch. 39, § 1, at 325-26; *id.* ch. 628, § 1, at 2099-100; *id.* ch. 693, § 4, at 3199-200; *id.* ch. 750, § 1, at 3333. One of the enactments amends the PFIA to include in the list of political subdivisions authorized to invest pursuant to the PFIA "a district or authority created under Article III, Section 52(b)(1) or (2), or Article XVI, Section 59, of the Texas Constitution" (*see* Acts 1989, 71st Leg., ch. 39, § 1, at 325-26); one amends the PFIA to include "a district or authority created under Article III, Section 52(b)(1) or (2), or Article XVI, Section 59, Texas Constitution" as well as "a hospital district [and] a fresh water supply district" (*see id.* ch. 628, § 1, at 2099); one amends the PFIA to include "a navigation district organized under Article III, Section 52, or Article XVI, Section 59, of the Texas Constitution" (*see id.* ch. 750, § 1, at 3333); one amends the PFIA to include "[any] public funds investment pool created under The Interlocal Cooperation Act (Article 4413(32c), [V.T.C.S.]" (*see id.* ch. 693, § 4, at 3200). Because our primary concern here is construing section 2(d), we need not reconcile the various amendments. *See Shults v. State*, 696 S.W.2d 126, 131 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (quoting *Wright v. Broeter*, 196 S.W.2d 82, 85 (Tex. 1946)) (stating rule that when construing acts passed during same legislative session, latter provision repeals former provision only if the latter provision expressly repeals former, or if provisions are irreconcilably repugnant). For purposes of this opinion, we will use the version of subsection (a) articulated in the enactment that added subsection (d), Acts 1989, 71st Leg. ch. 628, § 1, at 2099-100.

. . . .

> (d) In addition to the investments described by Subsection (a) of this section, an entity listed in that subsection may, in accordance with this Act, purchase, sell, and invest its funds and funds under its control in [a Securities and Exchange Commission]-registered, no-load[2] money market mutual fund with a dollar-weighted average portfolio maturity of 120 days or less whose assets consist exclusively of the obligations that are described by Subsection (a) of this section and whose investment objectives include seeking to maintain a stable net asset value of $1 per share. No entity listed in Subsection (a) of this section is authorized by this Act to invest in the aggregate more than 20 percent of its monthly average fund balance, excluding bond proceeds,[3] in money market mutual funds described in this subsection or to invest its funds or funds under its control, excluding bond proceeds, in any one money market mutual fund in an amount that exceeds 10 percent of the total assets of the money market mutual fund.

(Footnotes added.) You ask whether section 2(d) of the PFIA authorizes the public and nonprofit entities listed in section 2(a) to invest their funds and funds under their control in money market mutual funds holding only adjustable rate mortgages that United States agencies have issued. We conclude that it does, provided that the mutual fund meets the requirements articulated in section 2(d) and that the listed entity invests in the mutual fund only that portion of its money that section 2(d) permits.

---

[2]Usually, when an investor purchases a share of a mutual fund, the investor pays a "sales load," which is the difference between the public offering price the investor paid and the current net asset value per share that a mutual fund receives, less any portion of such difference that the mutual fund deducts for administrative expenses not properly chargeable to sales or promotional activities. SEC STAFF REPORT, PROTECTING INVESTORS: A HALF-CENTURY OF INVESTMENT COMPANY REGULATION 291 n.3 (1992) [hereinafter SEC STAFF REPORT]; see 15 U.S.C. § 80a-2(a)(35). The principal underwriter and the selling broker-dealer retain the sales load to finance the underwriter's profit, the broker's commission, and other sales and promotional expenses. SEC STAFF REPORT at 291. In contrast, a "no-load" fund is a mutual fund that markets its shares directly to the public and does not charge a sales load. Id. at 292.

Section 270.2a-7 of part 17, Code of Federal Regulations, establishes the conditions a registered investment company must satisfy to hold itself out to investors as a money market mutual fund. See 17 C.F.R. § 270.2a-7(b).

[3]For purposes of section 2 of the PFIA, "bond proceeds" is defined to include "proceeds from the sale of bonds and reserves and funds maintained for debt service purposes." V.T.C.S. art. 842a-2, § 2(c)(1).

The legislature enacted the PFIA in 1987 to enable certain entities to make investments that previously had been prohibited. *See* Acts 1987, 70th Leg., ch. 889, § 2, at 2985; *see also* Tex. Const. art. III, § 52(e). In 1989 the legislature amended the PFIA by, among other things, adding subsection (d), because, "[a]s important as the Public Funds Investment Act was, it did not completely satisfy the need for diversification in the management of public funds or the need for specialized investment vehicles to deal with the arbitrage rebate requirements of the Tax Reform Act of 1986." House Comm. on Financial Institutions, Bill Analysis, C.S.S.B. 1342, 71st Leg. (1989); *see* Acts 1989, 71st Leg., ch. 628. The legislature intended the amendments to liberalize the PFIA by permitting the listed entities to invest their funds and funds under their control in prime money market instruments and investment securities. *See* House Comm. on Financial Institutions, Bill Analysis, C.S.S.B. 1342, 71st Leg. (1989); Hearings on S.B. 1342 Before the Senate Comm. on State Affairs, 71st Leg. (Apr. 12, 1989) (testimony of Senator Leedom, sponsor of S.B. 1342) (tape available from Senate Staff Services).

We understand that an "adjustable rate mortgage" is a mortgage in which the interest rate on the loan is reset periodically. Certain federal government agencies, such as the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), and the Government National Mortgage Corporation (Ginnie Mae), issue or guarantee adjustable rate mortgages. We note that a witness who testified before the House Committee on Financial Institutions in 1989 did not include adjustable rate mortgages as an example of the investments money market mutual funds typically made at that time. *See* Hearings on H.B. 1751 Before the House Comm. on Financial Institutions, 71st Leg. (Apr. 17, 1989) (testimony of Winston Evans, Director of Revenue and Taxation for the City of Dallas) (tape available from House Committee Coordinator) (stating that money market mutual fund might have investments in treasury bills, commercial paper, and bankers' acceptances). Nevertheless, section 2(d) explicitly authorizes an entity listed in section 2(a) to invest a specified portion of its funds and funds under its control "in an SEC-registered, no-load money market mutual fund . . . *whose assets consist exclusively of the obligations that are described by Subsection (a) of this section.*" Because subsection (d) describes generally the money market mutual funds in which the listed entities could invest, we do not believe that the legislature intended to limit such an entity to investing in mutual funds that invested only in investments available in 1989. Thus, so long as the adjustable rate mortgages in which the money market mutual fund invests fall within one of the categories of obligations listed in section 2(a) of the act, we believe that a listed entity may invest in that money market mutual fund.

As stated above, section 2(a)(1) of the PFIA authorizes a listed entity to invest in an obligation of a United States agency. As you have described it, an adjustable rate mortgage that a federal government agency has issued or guaranteed constitutes an obligation that falls within the scope of section 2(a)(1). Accordingly, the plain language of subsection (d) authorizes a listed entity to invest a specified portion of its funds and funds under its control in a money market mutual fund that includes in its

portfolio adjustable rate mortgages obligating an agency of the federal government (so long as the money market mutual fund complies with the other requirements stated in section 2(d)).[4]

## S U M M A R Y

The Public Funds Investment Act, V.T.C.S. article 842a-2, authorizes cities, counties, and certain other public and nonprofit entities to invest their funds and funds under their control in mutual funds holding only adjustable rate mortgages that obligate United States agencies provided that the mutual fund complies with section 2(d) of the act, and provided that the entity invests no more of its money in the mutual fund than section 2(d) permits.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General

---

[4]Whether a particular money market mutual fund is a fund in which a listed political subdivision may invest under section 2(d) is a question of fact that cannot be answered in the opinion process.